J. H. SHIELDS v. THE TOWN OF DURHAM.

*Action for Damages—Injuries to Prisoner—Insufficient Protection from Cold—Liability of Town.*

1. If the authorities of a town provide in its prison the necessaries to protect a prisoner from bodily suffering, but the custodians of the jail neglect or fail to supply him with such necessaries, the town is not liable in damages for injury caused to the prisoner by such neglect or failure of the custodians, provided it is not shown that the officers of the town were negligent in supervising the custodians.

2. Where, in the trial of an action for damages for injury to plaintiff's health caused by the absence of window glass in a cell in which he was confined, it was not shown that the town authorities had notice of such defect or that they were negligent in supervising the jailer, etc., the plaintiff cannot recover.

CIVIL ACTION, to recover damages sustained by plaintiff, while incarcerated in the guard-house of the Town of Durham, tried before *Hoke, J.,* and a jury, at August Term, 1894, of DURHAM Superior Court, having been removed to that Court, on a motion for a change of venue, from Orange County where is was begun.

The complaint was as follows:

The plaintiff complaining alleges:

"I. That the Town of Durham is a municipal corporation, created by the State of North Carolina, having the power and authority among its many powers to appoint police officers or constables for the municipality, and having the power and authority to maintain, erect and construct suitable houses for the imprisonment of persons charged with violating its ordinances and laws of the State.

"II. That on or about January 1, 1893, and for sometime previous thereto, and for sometime subsequent thereto, one J. S. Scarlet was a duly appointed and commissioned public officer or constable of said Town of Durham.

"III. That on or about January 7, 1893, the said J. S. Scarlet while acting in the pretended discharge of his duty of police officer of the defendant, and under color and by virtue of his said office, with-force and arms, at and in the County of Durham and in the State of North Carolina, unlawfully and wilfully struck and beat the plaintiff, he the said plaintiff not being guilty of any violation of the laws of the State or of the ordinances of the Town of Durham, and after such unlawful assault and battery upon the plaintiff as aforesaid, the said J. S. Scarlet acting under his pretended authority and power as a police officer of the defendant, the Town of Durham, and in the pretended discharge of his duty as such officer, unlawfully and wilfully, with force and arms, arrested the plaintiff without warrant; the said plaintiff not violating any law of the State of North Carolina or any ordinance of the Town of Durham, and the said J. S. Scarlet, public officer of the defendant as aforesaid, did, with force and arms, unlawfully and wilfully imprison the plaintiff in the guard-house or jail of the defendant, and did detain him the said plaintiff, in said jail, for more than twelve hours, all to the great damage and injury of the plaintiff.

"IV. That while plaintiff was unlawfully detained in the

guard-house or town prison of the defendant as hereinbefore
stated the weather was excessively cold, the ground being
covered with snow and ice; that the said guard-house was
a small room exposed, having glass in its windows broken
out, plaintiff furnished with wholly insufficient bed clothes,
and these offensive and unclean: during the time of plain-
tiff's imprisonment the fire that heated said guard-house
went out and was not replenished, and no fuel furnished
and that by reason of and in consequence of the bad condi-
tion of said guard-house of defendant, and the cruel negli-
gence of the defendant, plaintiff suffered then greatly from
the severe cold, and has since then in consequence thereof
suffered great pain and sustained great injury to his
health.

"V. That the bad and dangerous condition of said guard-
house was well known to the defendant but it unlawfully
and negligently permitted it to be and continue.

"VI. That the defendant negligently and carelessly selec-
ted, appointed and commissioned the said J. S. Scarlet to be
a police officer of the Town of Durham, and the said J. S.
Scarlet was wholly unfit and unsuitable to be a police
officer of the defendant as is well known.

"VII. That on account of the wrongful acts and conduct
of the defendant, plaintiff has sustained great and serious
injuries from which he now suffers to his great damage in
the sum of Two Thousand Dollars.

"Wherefore, plaintiff prays judgment against the defend-
ant for the sum of Two Thousand Dollars. (2) For such
costs as are allowed by law. (3) For such other and further
relief as is consistent with law and the facts proven."

The answer contained a general denial of facts alleged in
the complaint.  The issues and responses were as follows:

1. Was plaintiff injured by negligence of defendant?
Answer.  Yes.

2. In what sum, if any, was he damaged? Answer $200.

The plaintiff was introduced as a witness in his own be-half and testified as follows:

I was imprisoned in the guard-house of the defendant on January 7th, 1893. The weather was severe. Had snowed during the day. The room was small, with a bunk for sleeping. The floor was zinc and from defect in the water pipe, floor was covered over with water. Several window panes were out. A mattress and an old dirty blanket were all the protection from the cold. Both were filthy and whole room offensive. A negro was in there scratching like he had the itch. Was in guard-house from twilight one afternoon till the next morning at 9 o'clock. Was sober. Suffered a great deal there and have suffered more since. Caught cold, giving him pain in his jaw and one of his hands. Was rendered rheumatic and still has very severe pain in the arm, thereby impairing his useful-ness. Blanket was wet and dirty. The water had frozen on bottom of cell. Room was five feet square and not room enough to move around in. Police officer put in a little coal at 9 o'clock that night, which went out and this was the only effort to make a fire. There was none made in the morning. A stove was in the room over next to the window. There was only one blanket there and that was too dirty to use. Room was six feet one way, and an iron railing ran across separating me from the stove. Weather had been cold all that day and before. Nothing to eat or drink was furnished me.

Cross-Examined.

Had been arrested for being drunk Saturday night before.

Mr. Morris, witness for plaintiff, testified as follows:

It was exceedingly cold weather and had been for several days. He went down to guard-house about 8 o'clock the

next morning and went on plaintiff's bond.    Plaintiff was
shivering and seemed to be suffering from a cold.    The
west window had a broken pane or window-light.    Quite
a breeze was blowing through when he approached.    A
stove was there but no fire was in it.    Shields complained
to me saying that he had not slept and that he had no
covering.    It was dark there, or there was very little light.
Is Shield's brother-in-law.

Mr. Hutchings, a witness for the plaintiff, testified as
follows:

It was exceedingly cold weather and had been for a
week and was very cold that night.    I went to the country,
but it was so cold that I could not travel, so left my horse
and came back on train.    There was snow and ice on the
ground.    Shields lives some five or six miles from town.

### DEFENDANT'S EVIDENCE.

Mr. Scarlet, witness for the defendant, testified:

I was in the guard-house.    There was a good fire in the
stove till I left at 12 o'clock.    There were four blankets
and two mattresses to each cell.    There was plenty of coal.
There was no water there and no water pipe tapped
the room.    The stove was red when Shields was put in
there.    He was drunk.    There were good shutters to the
windows of the room.    Room was ten feet square and the
ceiling eight feet.

Cross-Examined.

When we went in there the second time, Shields was
asleep on the bunk.    There were three windows to guard-
house, and the Chief of Police would have panes put in as
fast as drunken men broke them out.    The shutters were
kept closed in cold weather.    I went in there that night
and spread out the blankets before putting Shields in, and

SHIELDS *v.* DURHAM.

saw that the fire was made up before going away. He and Shields have had several fights, but had nothing against him.

Mr. Woodall, witness for the defendant, testified:

Was Chief of Police at this time and remember the night in question. It was the Town's duty to furnish blankets and I was charged with that duty. Comfortable blankets were provided, and when they wore out would get new ones. Town furnished me with the means and instructed me to keep plenty of blankets, and I did so to the best of my knowledge. There was plenty of coal on hand and I was instructed to keep fire there all night when it was cold.

Cross-examined.

Shields was numb and walked badly next morning. Had means furnished to put in glass and keep guard-house comfortable.

Mr. Cutts, witness for the defendant, testified:

There was fire kept in guard-house every night in cold weather. There were two bunks, and a mattress and a double blanket to each. There was no water where Shields was and no way for water to get there. This was the Saturday night before. Don't know the condition on the night in question.

Cross-examined.

On this last night does not know whether there was any coal in cell or not. Was not there this last Saturday night and does not know where Shields was placed.

Mr. Cheek, witness for the defendant, testified:

Was policeman in January, 1893, and recollect the night in question. Went in the cell where Shields was about 6 o'clock in the morning. There was fire in the stove at that time. Shields was standing at the door and he and I had a talk. Did not go in and could not say blankets

were there, but know they were always kept there. There were two double blankets for each bunk, and no single blankets, and good shuck mattresses when new.

Cross-examined:

It was the coldest wheather that has been in years.

Mr. Woodward, witness for the defendant, testified:

Was Clerk of the Board of Town Commissioners in January, 1893. Chief-of-police Woodall had full authority to provide full comforts for the guard-house, and to provide what was necessary for keeping it up. His bills for coal, blankets, etc., were always approved and paid. Sometimes the authority was verbal and sometimes written.

Mr. Wood, witness for the defendant, testified:

"Was policeman at this time and am now. Good bunks, blankets and coal furnished. Provision made to replenish the fire and kept fire all night in cold or wet weather."

Cross-Examined.

Did not go into the cell that night and don't know who did. Don't know whether there were any mattresses in there or not.

This was all the evidence.

At the close of the evidence the defendant prayed His Honor to give the special instructions hereto annexed, and His Honor gave only such as he embodied in the charge given by him as set out below.

The defendant excepted to His Honor's refusal to give his instructions asked for, and not embodied in the charge.

His Honor charged the jury as follows:

"If the jury answer the first issue 'No,' they need not consider the second issue. The burden of proof is upon the plaintiff, and he must satisfy the jury by a preponderance of the evidence that he was injured, and injured by the negligence of the defendant. If you shall find from the evidence that the plaintiff was injured, and was injured

by the negligence of the defendant, you will answer the first issue 'Yes,' and the second issue, such amount as you shall determine from the evidence is a fair compensation for his injury. If you shall find from the evidence that the window panes in the window of the guard-house had been broken out for any considerable length of time, exposing occupants to the inclemency of the weather, when it ought to have been discovered in the exercise of ordinary care, the town authorities are affected with notice, and if the injury to the plaintiff occurred from this, the defendant was negligent.

"The plaintiff claims that the prison was improperly constructed, insufficiently furnished and attended. The defendant is liable in damage only for a failure to so construct its prison or so provide it with fuel, bed-clothing, heating apparatus, attendance, and other things necessary, as to secure to prisoners a reasonable degree of comfort, and to protect them from such actual bodily suffering as would injure their health.

"If the prison of the defendant was properly constructed, and the Board of Commissioners of defendant provided the prison with sufficient fuel, bed-clothing, heating apparatus, attendance and other things necessary to secure to the plaintiff a reasonable degree of comfort, and to protect him from such actual bodily suffering as would injure his health, but the jailer, policemen or attendant, neglected to properly administer to his wants and necessities, the defendant is not liable, and the jury will answer the first issue 'No.'

"The laws of this state impose upon governing officials of municipal corporations, the duty of exercising ordinary care in procuring articles essential for the health and comfort of prisoners, and of overlooking their subordinates in the immediate control of the prisoners so far at least as to

116—26

replenish the supply of necessary articles when notified that they are needed, and of employing such agents, and of appropriating such money as may be necessary to keep the prison in such condition as to secure the comfort and health of the inmates."

Here His Honor fully recapitulated the evidence, and arrayed the testimony of the plaintiff and the defendant, and the contentions of each arising therefrom, and proceeded to charge as follows:

"If the jury shall find the prison to be as described by the plaintiff's testimony, and this arose because the Town authorities had not made proper provision for prisoner's comfort, and the injury was caused by such failure, the jury will answer the issue ' Yes;' if the jury shall find that the defendant had provided fuel and blankets, sufficient to make the plaintiff comfortable, the jury will answer the issue ' No;' or if the injury to plaintiff arose because plaintiff did not take advantage of the provision that was made for his comfort, the jury will answer the issue ' No;' or if plaintiff's injury arose because the policeman charged with the duty failed to give the plaintiff the benefit and protection of the provision made by the defendant, the jury will answer the issue ' No.'

"Municipal authorities are not responsible for the wrongful conduct of their agents or subordinates, in the exercise of the judicial, discretionary or legislative authority conferred by their charters, or in the discharge of a duty imposed solely for the public benefit, unless some statute subjects them to liability for such negligence. They are not responsible for unlawful arrests of persons by their officers, but the duty is imposed upon the governing authorities to provide a properly constructed prison and to have it properly supervised and overlooked, as heretofore called to your attention.

"In regard to the broken window panes, if the jury believe they were broken, and if the jury shall believe that they were broken out unexpectedly or recently, the defendant is not liable unless the governing authorities had notice.

"If the defendant supplied and furnished its Chief of Police with the means or proper credit to supply blankets in sufficient number to provide for the comfort of its prisoners under circumstances which might reasonably have been anticipated, the plaintiff is not entitled to recover."

Defendant's prayer for special instructions:

I. In order for the plaintiff to recover in this action, it is necessary to prove that he was actually damaged. There is no evidence by any witness of any actual damage whatever.

II. That before the plaintiff can recover in this action, he must allege and prove that he sustained an injury, whereof the proximate cause was the negligence of the City defendant, or its authorities, and it has not been alleged and there is no evidence that such negligence existed or was such proximate cause.

III. If the jury shall find that the plaintiff contributed in any manner to his own injury, if any injury he sustained, either by drunkenness or failure to avail himself of the means furnished by the defendant for keeping himself warm, or in any other manner which the testimony may show, then he is not entitled to recover.

IV. The defendant was bound to use only ordinary care under the circumstances, and there is no evidence showing, or tendency to show, any want of ordinary care on its part. If therefore the jury shall find that the plaintiff was injured by the window-panes being out in the prison, or by there being no proper bed-clothes or by failure of the police officers to keep a fire in the prison, they must, in order to

render the defendant liable, show that these facts were known to the City authorities, or that they had existed such a length of time as they would ordinarily have known it; and of these things, there is no evidence.

If the jury shall find that there was coal or other sufficient fuel wherewith to build fire sufficient to warm the room, then the defendant is not liable; even though the police officer in charge, on the night of the confinement of the plaintiff, failed and neglected to replenish and keep up said fire during the night, unless defendant knew that such police officer was negligent and careless in such particular, and there is no evidence that defendant knew or had any reason to believe, that such officer was generally negligent and careless. If the defendant supplied and furnished its Chief of Police with the means, or proper credit, necessary to supply blankets, in sufficient numbers to provide for plaintiff, under circumstances which might reasonably have been anticipated, the plaintiff would not be entitled to recover.

V. The plaintiff must satisfy the jury by a preponderance of evidence, that the injury he sustained, if any, was the proximate result of the negligence of the defendant, and not of the policeman, and if the jury shall be of opinion that such injury was brought about, even in part, by the negligent act of the plaintiff in failing to use the means supplied, or otherwise, the plaintiff would not be entitled to recover; but in order to recover, the jury must be satisfied by a preponderance of evidence that the exposure of the plaintiff in the prison, and without his fault, was the sole cause of his injury, not in any way aided by anything else wherein the plaintiff failed to exercise ordinary care. Plaintiff must be without fault in that regard, and take care of himself as a man of ordinary prudence would, under such circumstances, in order to entitle him to recover. The Town of Durham

SHIELDS v. DURHAM.

can be liable to the plaintiff in no event, except for its own negligence.   It cannot be liable for the tortious negligence of its police officers.

VI. If the plaintiff sustained an injury by reason of the failure of the defendant to anticipate and provide against an extraordinary cold night, he cannot recover therefor. Before the plaintiff can recover for an injury, he must show by a preponderance of the evidence, that the injury was the ordinary or probable consequence of the act complained of.

VII. If the plaintiff could have avoided the consequence of the act of the defendant, if such an act existed, by the exercise of ordinary care, he cannot recover.   It is not only requisite that the damage, actual or inferential, should be suffered, but the damage must be the legitimate consequence of the wrong.   If any injury has resulted in consequence of the wrongful act or omission, but only through, or by means of, some intervening cause, from which last cause the injury followed as the direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote.

VIII. In this case, if the window-glass had been broken and the bed-clothing furnished for the plaintiff had been destroyed, or the policeman had failed and neglected to provide for the plaintiff, but the governing officers of the defendant are not shown to have had actual notice thereof, or to have been negligent in providing such over-sight of the prison as would naturally be expected to give them timely information of its condition, there is not such a failure in discharging the duties of construction, or superintendence of the prison as to subject the City to liability for injury sustained by the plaintiff, by reason of the broken window or lack of bed-clothes, or failure on the part of the policeman to furnish them; and there is no evidence that

the governing officers knew of the broken windows, if they were broken, or that there was not sufficient bed-clothing, or that the policemen were careless and negligent of their duties, or that fire was not sufficient to keep the prisoner comfortable.

IX. All the evidence tends to prove that the Chief of Police was authorized and empowered to supply and put in window panes and necessary beds and bed-clothing, and necessary fuel for keeping prisoner comfortable. There is no evidence of negligence on the part of the governing authorities of the Town of Durham in any particular, and the plaintiff is not entitled to recover. If the governing authorities furnished means or credit to supply everything necessary, so as to secure the prisoners a reasonable degree of comfort and protect them from such actual bodily suffering as would injure their health, the City is not liable in damage for sickness and suffering endured by the prisoner, and caused by the neglect of the jailer, policeman or attendant, to properly minister to his wants and necessities. All the evidence tends to prove that the Chief of Police was authorized, directed and empowered by the governing officers to purchase and supply all the means necessary for the comfort of prisoners confined in the prison of the Town, and always paid for such supplies, and also furnish the means necessary for rendering said prison comfortable and healthy.

X. Upon the whole evidence, the plaintiff is not entitled to recover.

There was judgment for the plaintiff for $200, and defendant appealed.

*Messrs. J. W. Graham* and *Manning & Foushee*, for plaintiff.

*Messrs. Boone & Boone*, for defendants (appellants).

SHIELDS v. DURHAM.

MONTGOMERY, J.: In actions of this nature, this Court has decided in *Moffitt* v. *Asheville*, 103 N. C., 237, that cities and towns "are liable in damages only for a failure, either to so construct their prisons, or so provide them with fuel, bed-clothing, heating apparatus, attendants and other things necessary as to secure to the prisoners committed to them a reasonable degree of comfort, and protect them from such actual bodily suffering as would injure their health." If the aldermen of the city built a reasonably comfortable police prison and afterwards furnished to those who had immediate charge of it everything that was essential to prevent bodily suffering on the part of prisoners from excessive cold or heat or hunger and to protect their health, the city would not be liable, even if the suffering or sickness of the plaintiff was caused by neglect of the jailer, the policemen, or the attendants to keep the fires burning all night, or to give the plaintiff the necessary bed-clothing furnished to them. In Moffits's case, *supra*, Justice AVERY, who delivered the opinion of the Court, further says: "We think that where window-glass in the windows of a police prison has been broken, and the bed-clothing furnished for its inmates has been destroyed, but governing officers of the town are not shown to have had actual notice of the breaking or destruction, or to have been negligent in omitting to provide for such over-sight of the prison as would naturally be expected to give them timely information of its condition, there is not such a failure in discharging the duties of construction or superintendence, as to subject the corporation to liability."

The facts in the case before us are almost identical with those developed on the trial in Moffit's case. The plaintiffs in both testified to having been injured from cold blasts of air rushing through broken panes of window glass in the prison windows upon them in their cells, and for a want of

blankets and bed-clothes and fires to protect them from the cold. The defendants in both cases introduced six or more witnesses, including the chief of police, the clerk of the Board of Commissioners and others connected with the city government, who testified that the governing authorities of the town had always furnished a plenty of warm blankets and had instructed the officers in immediate charge of the prison to keep a plenty on hand, and also to keep fuel and fires sufficient to make the prisoners comfortable, and had always furnished those officers with the means and credit to do so. In the present case, it was also put in evidence for the defendant that the chief of police had window panes put in as fast as drunken men broke them out. There was no evidence put in by the plaintiff to rebut this testimony of the defendant. No evidence was introduced by the plaintiff to show notice to the defendant of the broken panes of glass or of the want of blankets, bed clothes or fire, or that the town authorities were negligent in omitting to provide for such oversight of the prison as would naturally be expected to give them timely information of its condition.

It is evident from the charge of His Honor that that part, and the only part of the complaint which made any allegation concerning the faulty construction of the guard-house, to-wit, " that the said guard-house was a small room exposed, having glass in its windows broken out, and that by reason of, and in consequence of the bad condition of said guard-house", was eliminated on the trial from the case, and that the case which His Honor submitted to the jury was upon the cause of action for the defendant's failure to furnish the plaintiff with the proper bed clothing and blankets and fires. His Honor in his instructions to the jury said: "If you shall find the prison to be as described by the plaintiff's testimony, and this arose because the town authorities

had not made proper provision for the prisoner's comfort, and the injury was caused by such failure, the jury will answer the issue yes." If it should be thought that by these words the Court submitted the question of the alleged faulty construction of the prison to the jury, the next sentences of the charge will show that that view of the case was not in his mind: "If the jury shall find that the defendant had provided fuel and blankets sufficient to make the plaintiff comfortable, the jury will answer the issue No; or if the injury to plaintiff arose because plaintiff did not take advantage of the provision that was made for his comfort, the jury will answer the issue No; or if plaintiff's injury arose because the policemen charged with the duty failed to give the plaintiff the benefit and protection of the provision made by the defendant, the jury will answer the issue No." If the matter of the construction of the guardhouse had been in his mind, he could not have given that portion of his charge, last quoted, because the town might not have been negligent in the matter of furnishing blankets, bed clothes and fires and yet have been negligent in the building and construction of a guard-house suitable for a prison. The instructions asked the Court by the defendant numbered 8, 9, 10 should have been given to the jury. There is error and the defendant is entitled to a new trial.

New Trial.