## LEFROIS v. MONROE COUNTY.

(Supreme Court, Appellate Division, Fourth Department.    December 18, 1897.)

1. NUISANCE—MAINTENANCE BY COUNTY—ABATEMENT—REMEDY.
   An action to restrain a county from maintaining a nuisance, and to recover damages sustained in consequence thereof, is properly brought; mandamus is not an adequate remedy.

2. COUNTIES—MAINTENANCE OF NUISANCE—LIABILITY.
   A county which owns and conducts a farm as a convenient, but nonessential, adjunct to an almshouse, is liable for the injury done to adjoining owner, by utilizing the sewage of the almshouse to fertilize its farm.

Appeal from trial term, Monroe county.

Action by Joseph Lefrois against the county of Monroe to abate a nuisance and to recover damages sustained in consequence thereof. From a judgment for plaintiff, defendant appeals.    Affirmed.

The plaintiff brings this action to restrain the defendant from the commission of a nuisance, and to recover damages which he claims to have sustained in consequence of the maintenance thereof.    The essential facts of the case, as found by the trial court, are as follows, viz.:    The plaintiff is the owner of a dairy farm located in the town of Brighton, Monroe county, upon which he has expended a large sum of money in the erection of buildings suitable for the purposes of his business.    Upon this farm the plaintiff has been accustomed to keep some 30 or more cows, the milk from which he has marketed in the neighboring city of Rochester.    In close proximity to the plaintiff's premises the defendant is likewise the owner of a farm; and across the street from this farm it also owns other lands, upon which it has for many years maintained an almshouse and penitentiary, the average number of inmates of these institutions being about 800.    Upon the adjoining premises there is also located the state hospital for the insane, which is now owned by the state, but which was formerly, and until the year 1892, owned and managed by the county of Monroe as a county insane asylum; the number of patients in this institution being about 300 per annum.    The defendant's farm is situated above that of the plaintiff, and the natural course of the drainage therefrom is through a depression upon and across the plaintiff's lands.    Through this depression a stream of water, rising in the lowlands southeast of the county farm, has been accustomed to flow onto and over the northerly portion of the plaintiff's premises, and from thence easterly, into what is known as "Allen's Creek."    The water in this stream, until its pollution by the defendant, was comparatively pure and wholesome, and was of great value to the plaintiff in his business.    In 1887 the defendant constructed two large reservoirs upon the highest portion of its farm, into which it caused to be conducted, by means of pipes, all the sewage from these several buildings, except the night soil from the penitentiary.    The liquid contents of these reservoirs were discharged into this stream, and at intervals the solid portions were composted with lime, and spread upon the surface of the defendant's land, from which, in times of rain or snow, they were carried in considerable quantities into the stream, thereby polluting the same, and rendering it unfit for use by the plaintiff's cattle.    The presence of this sewage also caused the atmosphere in that vicinity to become impregnated with foul and noxious odors, which rendered the plaintiff's premises uncomfortable, undesirable, and unhealthy as a place of residence.    By reason of this condition of affairs the plaintiff has been deprived of the use of the waters of the stream, as well as of several acres of his land lying immediately adjacent thereto, and upon the north side thereof, and he has also been obliged to erect and maintain a fence to keep his cattle from drinking the water of the stream, and to construct and maintain a well and pump as a means of water supply for his stock; and he has in several other respects suffered great annoyance, trouble, and expense by reason of the nuisance complained of.    Upon these facts the court granted the relief demanded by the complaint, including damages in the sum of $600, and from the judgment awarding the same this appeal is brought.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

John Desmond, for appellant.
J. A. Stull, for respondent.

ADAMS, J.   There are but two contentions presented by the appellant for our consideration upon this review, and they are: (1) That this action should not be maintained, for the reason that the plaintiff has an adequate remedy at law; and (2) that the nuisance complained of was created by the officers of the defendant while engaged in the performance of a sovereign duty, and that consequently, in no event, can an action be maintained against the defendant therefor.

The contention that the plaintiff should be denied the relief sought by means of this action, for the reason that some legal remedy was available to him, requires but little consideration.   The only legal remedy suggested is mandamus, and that is one which obviously would prove wholly inadequate in a case like this, for the office of a writ of mandamus is, generally speaking, to compel the performance of an official duty, which is either ministerial in its character, or else one which is specifically directed by statute.   People v. Common Council, 78 N. Y. 33.   Moreover, mandamus is an extraordinary remedy, which is to be resorted to only in cases where a legal right is clearly established; as where a public body refuses to audit a claim which is just and reasonable.   And, while in such a case it may be set in motion to compel action, it cannot direct the body how to act, where the exercise of a discretionary power is involved.   People v. Trustees, 21 Hun, 184; Albrecht v. Queens Co., 84 Hun, 399, 32 N. Y. Supp. 473.

In the case at bar the relief sought is both equitable and legal, and neither the one nor the other could be obtained by a writ of mandamus.   The county could not be directed to abate the nuisance which it had created in any particular manner, without interfering with the discretionary power of the board of supervisors, and for a like reason it could not be compelled to audit an unliquidated claim for damages.   It seems quite clear, therefore, that the plaintiff has not mistaken his remedy, and the only question concerning which there is any opportunity for serious controversy is that which involves the defendant's liability for the injury which it has caused to be inflicted upon the plaintiff.

In entering upon the discussion of the second of the above propositions, upon the correctness of which the learned counsel for the defendant rests his main contention, it may be conceded that the county of Monroe is a political division of the state; and that although by the county law (chapter 686, Laws 1892) it is termed a "municipal corporation," yet in the management and care of its paupers and criminals, at the time and in the manner specified, it was acting under legislative sanction.   It was therefore engaged in the performance of a public duty of the highest importance, and that duty had, of necessity, to be delegated to officers who were selected

and employed for that specific purpose. These officers, while engaged in discharging the duties thus imposed upon them, were doubtless exercising a sovereign power for the benefit of the general public; and consequently for an injury which resulted from their lack of skill, or even from their negligence, while actually engaged in the performance of their duty, no action will lie against the county which they represented. Maxmilian v. Mayor, 62 N. Y. 160; Hughes v. Monroe Co., 147 N. Y. 49, 41 N. E. 407; Alamango v. Supervisors, 25 Hun, 551; Albrecht v. Queens Co., supra; Dill. Mun. Corp. (4th Ed.) § 693.

The reason for the rule laid down in these, as in many other, related cases, is that where a power conferred by the legislature upon one of the political divisions of the state is public, or is used for public purposes, and not for the private advantage or benefit of the municipality, the officers intrusted with the execution of that power must be regarded as public officials, and not as the agents or servants of the municipality; or, to state it still more concisely, a corporation, while in the exercise of the sovereign power conferred upon it, is not liable for the acts of the public officials through whom that power is exercised. It follows, therefore, that, if the plaintiff's case is one to which this rule is applicable,—that is, if the injury of which he complains is chargeable to the misfeasance of the defendant's officers while engaged in the performance of a public duty,—he is, as the defendant contends, clearly remediless. That the damage to the plaintiff's premises was thus caused is not only most persistently claimed by the defendant, but in support of that claim it is quite ingeniously argued by its learned counsel that it became the duty of the defendant's board of supervisors to make some disposition of the sewage which came from the several institutions which have been mentioned; that this duty was a public one; and that consequently no liability attached to the county because it was performed in a negligent or wrongful manner. Viewed from one standpoint, this contention is not without some force; but we are nevertheless disposed to regard it as fallacious for reasons which we shall briefly recite. As has already been stated, the defendant is possessed of a farm the title to which, under the laws of this state, it is authorized to hold for the use and benefit of the inhabitants of Monroe county. Laws 1892, c. 686, § 12, subds. 1, 13. This farm consists of about 60 acres of land, and is separated from the premises upon which the almshouse and other county buildings are located by Elmwood avenue. It is unquestionably conducted in connection with these institutions, and for the purpose of supplying them with such of its products as they may require or be able to use; and it was upon these premises that the contents of the reservoirs hereinbefore referred to were carried, with the obvious design of enriching the soil, thereby making it more productive and enhancing its market value. The defendant being then the owner of this farm, and as such entitled to all the incidents and advantages of ownership, it would seem that it ought at the same time to be subject to the same obligations and responsibilities in its care and management as are imposed upon other owners of real estate, and

we think it would be a most deplorable perversion of the principle we have been considering to say that in such circumstances a munic- ipal corporation might create a nuisance upon its own premises to the annoyance and injury of adjoining owners, and escape all lia- bility therefor by merely insisting that the nuisance had been cre- .ated by its officers while in the discharge of a sovereign duty. There is, in our judgment, a broad distinction between the obligations in- .curred in the management of an almshouse or other public institu- tion and those which are involved in the ownership of a farm, al- though the latter may be an adjunct or accessory to the former; .and this distinction has been frequently recognized by the courts of this and other states, as well as by elementary writers. An emi- nent writer upon the subject of municipal corporations, whose dec- laration of a rule of law is always accepted as authoritative, in dis- cussing this most important question makes use of the following language, viz.:

"* * * Municipal corporations are liable for the improper management and use of their property, to the same extent and in the same manner as private corporations and natural persons. Unless acting under some valid special legislative authority, they must, like individuals, use their own so as not to injure that which belongs to another, or unjustly or improperly invade private rights. Thus they may erect a building for corporate purposes, but, if in so doing they should place its foundations in such a manner as to cause water to flow back on private owners, the latter would have their action for the damage, the same as if the injury had been caused by an individual." Dill. Mun. Corp. (4th Ed.) § 985.

Among the cases cited in support of this dictum is that of Bailey v. City of New York, 3 Hill, 531, which was an action on the case for injuries occasioned by the negligent construction of a dam on the Croton river, and in which it was said by Chief Justice Nelson, who delivered the opinion of the court, that, while in certain cases corpo- rations have sovereign powers, they also have duties as individuals, and therefore it is upon the like distinction that municipal corpora- tions, in their private character as owners and occupiers of lands and houses, are regarded in the same light as individual owners and occupiers, and dealt with accordingly. This case was subsequently affirmed by the court of errors, and Chancellor Walworth in his opinion stated most explicitly that the judgment must be sustained, if at all, upon the ground that the "corporation was legally bound to see that its corporate property was not used by any one so as to become noxious to occupiers of property on the river below." 2 Denio, 433–445. Another case cited by the text writer from whom we have quoted is that of Eastman v. Meredith, 36 N. H. 296, in which it was held that where municipal corporations, including counties, were empowered to hold and manage real property for cer- tain purposes, there would seem to be no sound reason for exempt- ing them from the operation of "the general maxim which requires an individual to so use his own that he shall not injure that which belongs to another."

But nowhere perhaps is the distinction which we are seeking to draw between acts done by a municipal corporation in the discharge of a public duty, and those performed in the management of its pri-

vate property, more clearly presented than in the case of Hill v. City of Boston, 122 Mass. 344. This was the case of a child who was injured by reason of the unsafe condition of a stairway, while attending a public school in a building provided by the city of Boston, under the duty imposed upon it by the general laws of the state. It was held that the action could not be maintained, for the reason that the duty to build and keep in a proper state of repair a school house was a public duty; but in a most exhaustive opinion, in which numerous authorities bearing upon the question in both England and this country are reviewed, Chief Justice Gray takes occasion to say that:

"The distinction between acts done by the city in discharge of a public duty, and acts done for what has been called, by way of distinction, its private advantage or emolument, has been clearly pointed out by two eminent judges, while sitting in the supreme courts of their respective states, who have since acquired a wider reputation in the supreme court of the Union, and by the present chief justice of England."

He then cites Bailey v. City of New York, 3 Hill, 531–539, Western Sav. Fund Soc. v. City of Philadelphia, 31 Pa. St. 185, 189, and Scott v. Mayor, 2 Hurl. & N. 204–210; and, to illustrate the distinction which the learned chief justice so clearly recognizes, he says further:

"If a city, by its agents, without authority of law, makes or empties a common sewer upon the property of another, to his injury, it is liable to him in an action of tort. But * * * the cause of action is not neglect in the performance of a corporate duty. * * * It is the doing of a wrongful act, causing a direct injury to the property of another, outside of the limits of the public work."

These and many other cases of like tenor, which might be cited, amply sustain the theory upon which the plaintiff seeks to maintain his action; and they furnish abundant authority for the conclusion we have reached, which is that for a tort committed by this defendant upon premises which it had acquired for its mere convenience, advantage, or profit, and not because their possession was absolutely essential to the proper discharge of a public duty, it is liable to an adjoining owner whose premises are injured thereby. In short, that it is just as liable for creating and maintaining a nuisance, either public or private, as an individual would be.

We think the judgment appealed from should be affirmed, with costs. All concur.