MARGARET EDDY, as Administratrix, etc., of WILLIAM C. EDDY, Deceased, Appellant, *v.* THE VILLAGE OF ELLICOTTVILLE, Respondent.

*Village — it is not liable in damages for a failure to keep its jail in a suitable condition.*

A village, in its maintenance and care of the village jail, acts in a governmental and not in its corporate capacity; and where a prisoner, while confined in an unheated room of the jail, the windows of which are broken, contracts a severe cold, terminating in pneumonia, from which he dies, the village is not liable in damages to his administratrix for its failure to keep the jail in a suitable condition.

APPEAL by the plaintiff, Margaret Eddy, as administratrix, etc., of William C. Eddy, deceased, from a judgment of the Supreme

Court in favor of the defendant, entered in the office of the clerk of the county of Cattaraugus on the 1st day of June, 1898, upon the dismissal of the complaint by direction of the court upon the opening of the case to the jury by the plaintiff's counsel.

*E. D. Northrup*, for the appellant.

*John K. Ward*, for the respondent.

ADAMS, J.:

The facts of this case, succinctly stated, are as follows, viz. : The defendant is a municipal corporation, created under the provisions of the general act of 1870 relative to the incorporation of villages (Chap. 291) and the acts amendatory thereof.

In virtue of the power and authority conferred upon it by the provisions of that act, it is alleged and not denied that " the defendant kept, maintained, possessed and controlled a village lockup, situated on the public square in said village of Ellicottville in which the defendant and its police officers regularly confined and caused and suffered to be incarcerated and confined therein persons who were from time to time arrested for violations of the ordinances of said defendant and of the criminal laws of this State."

It appears that in the evening of February 17, 1897, the plaintiff's husband and intestate was arrested by one of the defendant's peace officers for intoxication and confined in the lockup for the entire night; that while thus confined he contracted a severe cold which terminated in pneumonia, from which disease he died in about one week thereafter.

It further appears that at the time the plaintiff's intestate was thus imprisoned the lockup was, and for a considerable period prior thereto had been, in a dilapidated condition ; that many of the windows thereof were broken ; that the room in which the intestate was confined was not warmed ; that he was consequently exposed to cold weather and draughts which came in through the broken windows and was compelled to pass the night without any suitable protection therefrom, and that, as a result of such exposure, he contracted the disease which terminated his life.

The foregoing facts are all alleged in the complaint, and, inas-

much as the complaint was dismissed upon the opening of the plaintiff's counsel, they must, for the purposes of this review, be accepted as the truth of the case. (*Kennedy* v. *Mayor*, 73 N. Y. 365.)

The main question, therefore, which we are called upon to decide is whether, assuming these facts to be true, they constitute a cause of action against this defendant, or, in other words, whether the defendant, a municipal corporation, is, under the circumstances of this case, liable for a negligent omission of duty which, it must be admitted, caused the death of the plaintiff's intestate.

As introductory to a consideration of this question it will be desirable, we think, to understand precisely what rights and liabilities attached to the defendant when, availing itself of the provisions of the act of 1870, it acquired corporate existence.

A municipality, although a political division of the State, possesses two separate and distinct powers, one of which may be termed governmental or public and the other private or corporate. (*Hill* v. *City of Boston*, 122 Mass. 344; *Lloyd* v. *Mayor*, etc., *of City of New York*, 5 N. Y. 369.)

In the exercise of the first of these powers the city or village is invested with the quality of sovereignty, while in the exercise of the second it occupies the same relation to the individual that any other corporate body does. Obviously, therefore, it is of the first importance that the true line of demarcation between these two powers should be ascertained in order that it may be determined under which class or division the present case falls. For if the duty of maintaining a village lockup or jail in a safe and healthful condition is a corporate one, that is, if it is one which falls within the second definition of municipal powers, then clearly the defendant is liable in a civil action to any individual who may have suffered damage in consequence of its omission to perform that duty, whereas, if the duty is purely public or governmental in its character, it is equally clear that no liability for a like omission would attach. (*Reynolds* v. *Board of Education*, 33 App. Div. 88.) The ascertainment of this dividing line is a problem which in many instances may prove somewhat difficult of solution, but, as was said in the case of *Lloyd* v. *The Mayor* (*supra*), "when that line is ascertained it is not difficult to determine the rights of parties, for the rules of law are clear and explicit which establish the rights, immunities

and liabilities of the appellants (municipality) when in the exercise of each class of powers."

It is not contended, as we understand it, that the defendant is responsible by reason of any statutory requirement that it shall keep the building in question in a safe and healthful condition, and it necessarily follows that if any liability whatever attaches for an omission of duty in that regard it is simply an implied one.

Now, the basis of an implied municipal liability for negligence is either an obligation which rests upon the municipality in respect of its special or local interests, or else it is one under which it voluntarily assumes an undertaking from which it derives some benefit or advantage, or for which it expects to receive a consideration. (Dillon Mun. Corp. [4th ed.] §§ 980, 981.)

To illustrate: It was held in a very early case that a municipal corporation was responsible for the negligence and unskillfulness of its agents and servants in the construction of a dam on the Croton river, it appearing that the dam was a part of the work undertaken pursuant to an act of the Legislature by which the city was supplied with water. ` (*Bailey* v. *Mayor*, 3 Hill, 531; *Mayor, etc., of New York* v. *Bailey*, 2 Den. 433.)

More recently such a corporation was adjudged liable to an individual for damage to his lands resulting from the omission of the city to keep its sewers in a proper state of repair. (*Lloyd* v. *Mayor, etc., of City of New York, supra; Barton* v. *City of Syracuse*, 36 N. Y. 54.)

In still another case, where a municipal corporation was charged with the duty of properly maintaining a dock, from which presumably it derived some profit or advantage, it was held liable for damage to a third party resulting from a negligent omission of that duty. (*Kennedy* v. *Mayor, supra.*) ·

And this court has very recently held that a county which owned and conducted a farm in connection with and for the benefit of certain charitable and penal institutions, was liable to an adjoining owner for injuries to his premises resulting from the pollution of a stream of water passing over the same. (*Lefrois* v. *County of Monroe*, 24 App. Div. 421.)

Many other like cases might·be cited which would furnish ample illustration of the distinction which the law makes between a power

which is sovereign and one which is simply corporate. It would seem, however, that those to which reference has already been made demonstrate quite clearly that the maintaining of a village jail in a safe and healthful condition is an act which does not properly fall within the second class of municipal powers, as hereinbefore defined, and, consequently, it only remains to be determined whether or not such an act may be termed a governmental power.

Inherently, as well as by legislative enactment, the defendant, as one of the political divisions of the State, is invested with certain police powers, by the exercise of which, through its police officers, it is authorized and enabled to protect the lives and property of its citizens. (*City of Rochester* v. *West*, 29 App. Div. 125.) Among the powers thus conferred is that of arresting the violators of the law, and this, of course, includes the power to imprison ; for it would be useless to arrest such offenders if no place were provided in which to confine them while undergoing punishment.

If then, in the exercise of this power, the defendant caused the intestate to be arrested, it will hardly be contended, we assume, that the village would have been liable for any injury which might have resulted to such intestate by reason of the negligent or unskillful conduct of the officer who, in the performance of his duty, caused the arrest to be made. And it seems equally clear that, within well-settled principles, no liability would have attached to the village by reason of the failure of the officer in charge of the jail to provide the intestate with such things as were essential to his health and comfort while he was undergoing confinement in that institution. (*Maxmilian* v. *Mayor*, 62 N. Y. 160.)

If this be conceded, as we think it must be, it is difficult to assign any sufficient reason for holding the defendant liable for its omission to keep its jail or lockup in suitable condition; for this is a duty which it is called upon to perform only in its public or governmental capacity, and it is also one, the performance of which is, of necessity, committed to the police officers of the municipality. (*Lorillard* v. *Town of Monroe*, 11 N. Y. 392, 394.)

We have been unable to find any case arising in this State in which the precise question which is here presented has received adjudication, and there is much conflict of authority in the decisions of other States bearing upon that question.

In one case quite similar in some of its features to the one under consideration, the Supreme Court of North Carolina held that a municipality was liable for the death of a person confined in the city prison, the jury having found that his death was "accelerated by the noxious air of the guard house" (*Lewis* v. *City of Raleigh*, 77 N. C. 229), and this doctrine was followed more recently by the same court in another case arising out of a state of facts even more strikingly like those alleged in the complaint herein. (*Shields* v. *Durham*, 116 N. C. 394.)

While in *Edwards* v. *Town of Pocahontas* (47 Fed. Rep. 268) the court, after alluding to the distinction between counties and municipal corporations proper, says that, if a municipality, having power to maintain a jail, although not required to do so, undertakes to exercise the power, it will be liable for the negligent exercise of it in keeping the jail in such a filthy and unfit condition that the health of a prisoner is injured thereby.

It seems to be universally conceded that a county, by reason of the fact that it is a political division of the State, created for convenience, is under no liability in respect of torts, except as the same is imposed by statute; and for the same reason it is stated by an eminent text writer that " such organizations as townships, school-districts, road-districts and the like, though possessing corporate capacity and power to levy taxes and raise money for their respective public purposes, have been very generally considered *not to be liable in case, or other form of civil action, for neglect of public duty, unless such liability be created by statute.*"

And he adds: " A *county*, though it has power to erect and repair public buildings, and to levy and collect a tax for that purpose, is not responsible, in the absence of a statute making it so, for *injuries resulting from the unsafe and dangerous condition of county buildings.*" (Dillon Mun. Corp. [4th ed.] § 963.)

In our opinion the village of Ellicottville is as much a political division of the State as is the county in which it is located; and this being the case, no reason suggests itself to our mind why, in circumstances like those disclosed by the record in this case, it should be subject to any other or different rule of liability for the omission of a public duty. That this view of the matter is not without substantial support can be ready demonstrated by reference to adju-

dications which are certainly entitled to as much weight and consideration as those already cited.

In _Blake_ v. _City of Pontiac_ (49 Ill. App. 543) it was held that the keeping of a city jail is an act which the city is empowered to do only in its public capacity; that the same is within the police power of the city, and that consequently the city is not responsible for the wrongful acts of its agents in omitting to properly maintain that institution.

In another case arising in the same State, where it was charged that the defendant had created and maintained a "noisome, unhealthy and uncomfortable prison," it was said by the court that "while the trustees and other officers might by illegal and unwarranted exercise of power render themselves individually liable that would not render the town liable." (_Board of Trustees_ v. _Schroeder_, 58 Ill. 353.)

So, too, in the States of West Virginia, Minnesota and Kansas, it has been held that the duty and function of keeping a jail are plainly and properly governmental in character, and fall within the rule that municipal corporations are not liable for acts done and powers exercised in that capacity. (_Brown_ v. _Guyandotte_, 34 W. Va. 299; _Gullikson_ v. _McDonald_, 62 Minn. 278; _La Clef_ v. _City of Concordia_, 41 Kans. 323; _City of New Kiowa_ v. _Craven_, 46 id. 114.)

These cases are all directly in point and they are in perfect accord with the views to which we have given expression, as well as with the principle which we are satisfied ought to be applied to the present case, and which when applied necessarily leads to an affirmance of the judgment appealed from.

All concurred.

Judgment affirmed, with costs.