### EDDY v. VILLAGE OF ELLICOTTVILLE.

(Supreme Court, Appellate Division, Fourth Department. December 9, 1898.)

MUNICIPAL CORPORATIONS—NEGLIGENCE—OMISSION OF PUBLIC DUTY.

> Where plaintiff's intestate was arrested for the violation of a village ordinance, and imprisoned in a place negligently permitted to become and remain so dilapidated in its condition that, in consequence of exposure therein, he contracted a disease which caused his death, the village was not liable to an action for the damages resulting from such negligent omission of duty in the exercise of its governmental functions.

Appeal from trial term, Cattaraugus county.

Action by Margaret Eddy, as administratrix of the estate of William C. Eddy, deceased, against the village of Ellicottville. From a judgment dismissing her complaint, on the opening of the case to the jury by her counsel, plaintiff appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and WARD, JJ.

E. D. Northrup, for appellant.
John K. Ward, for respondent.

ADAMS, J. The facts of this case, succinctly stated, are as follows, viz.:

The defendant is a municipal corporation, created under the provisions of the general act of 1870 relative to the incorporation of villages (chapter 291) and the acts amendatory thereof. In virtue of the authority and power conferred upon it by the provisions of that act, it is alleged, and not denied, that "the defendant kept, maintained, possessed, and controlled a village lockup, situate on the public square in said village of Ellicottville, in which the defendant and its police officers regularly confined, and caused and suffered to be incarcerated and confined therein, persons who were from time to time arrested for violations of the ordinances of said defendant and of the criminal laws of this state." It appears that

in the evening of February 17, 1897, the plaintiff's husband and intestate was arrested by one of the defendant's peace officers for intoxication, and confined in the lockup for the entire night; that while thus confined he contracted a severe cold, which terminated in pneumonia, from which disease he died in about one week thereafter. It further appears that at the time the plaintiff's intestate was thus imprisoned the lockup was, and for a considerable period prior thereto had been, in a dilapidated condition; that many of the windows thereof were broken; that the room in which the intestate was confined was not warmed; that he was consequently exposed to cold weather and draughts, which came in through the broken windows, and was compelled to pass the night without any suitable protection therefrom; and that, as a result of such exposure, he contracted the disease which terminated his life.

The foregoing facts are all alleged in the complaint, and, inasmuch as the complaint was dismissed upon the opening of the plaintiff's counsel, they must, for the purposes of this review, be accepted as the truth of the case. Kennedy v. Mayor, etc., 73 N. Y. 365.

The main question, therefore, which we are called upon to decide, is whether, assuming these facts to be true, they constitute a cause of action against this defendant; or, in other words, whether the defendant, a municipal corporation, is, in the circumstances of this case, liable for a negligent omission of duty which it is admitted caused the death of the plaintiff's intestate.

As introductory to a consideration of this question, it will be desirable, we think, to understand precisely what rights and liabilities attached to the defendant when, availing itself of the provisions of the act of 1870, it acquired corporate existence. A municipality, although a political division of the state, possesses two separate and distinct powers, one of which may be termed governmental or public, and the other private or corporate. Hill v. City of Boston, 122 Mass. 344; Lloyd v. City of New York, 5 N. Y. 369. In the exercise of the first of these powers the city or village is invested with the quality of sovereignty, while in the exercise of the second it occupies the same relation to the individual that any other corporate body does. Obviously, therefore, it is of the first importance that the true line of demarkation between these two powers should be ascertained, in order that it may be determined under which class or division the present case falls, for, if the duty of maintaining a village lockup or jail in a safe and healthful condition is a corporate one,—that is, if it is one which falls within the second definition of municipal powers,—then clearly the defendant is liable in a civil action to any individual who may have suffered damage in consequence of its omission to perform that duty; whereas, if the duty is purely public or governmental in its character, it is equally clear that no liability for a like omission would attach. Reynolds v. Board, 33 App. Div. 88, 53 N. Y. Supp. 75. The ascertainment of this dividing line is a problem which in many instances may prove somewhat difficult of solution, but, as was said in the case last cited, "when that line is ascer-

tained it is not difficult to determine the rights of the parties, for the rules of law are clear and explicit which establish the rights, immunities, and liabilities of the (municipality) when in the exercise of each class of powers." It is not contended, as we understand it, that the defendant is responsible by reason of any statutory requirement that it shall keep the building in question in a safe and healthful condition, and it necessarily follows that, if any liability whatever attaches for an omission of duty in that regard, it is simply an implied one.

Now, the basis of an implied municipal liability for negligence is either an obligation which rests upon the municipality in respect of its special or local interests, or else it is one under which it voluntarily assumes an undertaking from which it derives some benefit or advantage, or for which it expects to receive a consideration. Dill. Mun. Corp. (4th Ed.) §§ 980, 981. To illustrate: It was held, in a very early case, that a municipal corporation was responsible for the negligence and unskillfulness of its agents and servants in the construction of a dam on the Croton river; it appearing that the dam was a part of the work undertaken pursuant to an act of the legislature by which the city was supplied with water. Bailey v. Mayor, etc., 3 Hill, 531, 2 Denio, 433. More recently such a corporation was adjudged liable to an individual for damage to his lands resulting from the omission of the city to keep its sewers in a proper state of repair. Lloyd v. City of New York, supra; Barton v. City of Syracuse, 36 N. Y. 54. In still another case, where a municipal corporation was charged with the duty of properly maintaining a dock, from which presumably it derived some profit or advantage, it was held liable for damage to a third party resulting from a negligent omission of that duty. Kennedy v. Mayor, etc., supra. And this court has very recently held that a county which owned and conducted a farm in connection with, and for the benefit of, certain charitable and penal institutions, was liable to an adjoining owner for injuries to his premises resulting from the pollution of a stream of water passing over the same. Lefrois v. Monroe Co., 24 App. Div. 421, 48 N. Y. Supp. 519. Many other like cases might be cited which would furnish ample illustration of the distinction which the law makes between a power which is sovereign and one which is simply corporate. It would seem, however, that those to which reference has already been made demonstrate quite clearly that the maintaining of a village jail in a safe and healthful condition is an act which does not properly fall within the second class of municipal powers, as hereinbefore defined; and consequently it only remains to be determined whether or not such an act may be termed a governmental power.

Inherently, as well as by legislative enactment, the defendant, as one of the political divisions of the state, is invested with certain police powers, by the exercise of which, through its police officers, it is authorized and enabled to protect the lives and property of its citizens. City of Rochester v. West, 29 App. Div. 125, 51 N. Y. Supp. 482. Among the powers thus conferred is that of arresting the violators of the law, and this, of course, includes the power to imprison; for it would be

useless to arrest such offenders if no place were provided in which to confine them while undergoing punishment. If, then, in the exercise of this power, the defendant caused the intestate to be arrested, it will hardly be contended, we assume, that the village would have been liable for any injury which might have resulted to such intestate by reason of the negligent or unskillful conduct of the officer who, in the performance of his duty, caused the arrest to be made. And it seems equally clear that, within well-settled principles, no liability would have attached to the village by reason of the failure of the officer in charge of the jail to provide the intestate with such things as were essential to his health and comfort while he was undergoing confinement in that institution. Maxmilian v. City of New York, 62 N. Y. 160. If this be conceded, as we think it must be, it is difficult to assign any sufficient reason for holding the defendant liable for its omission to keep its jail or lockup in suitable condition; for this is a duty which it is called upon to perform only in its public or governmental capacity, and it is also one the performance of which is, of necessity, committed to the police officers of the municipality. Lorillard v. Town of Monroe, 11 N. Y. 392–394.

We have been unable to find any case arising in this state in which the precise question which is here presented has received adjudication, and there is much conflict of authority in the decisions of other states bearing upon that question. In one case, quite similar in some of its features to the one under consideration, the supreme court of North Carolina held that a municipality was liable for the death of a person confined in the city prison, the jury having found that his death was "accelerated by the noxious air of the guard house" (Lewis v. City of Raleigh, 77 N. C. 229); and this doctrine was followed more recently by the same court in another case arising out of a state of facts even more strikingly like those alleged in the complaint herein (Shields v. Town of Durham, 116 N. C. 394, 21 S. E. 402); while in Edwards v. Pocahontas, 47 Fed. 268, the court, after alluding to the distinction between counties and municipal corporations proper, says that if a municipality, having power to maintain a jail, although not required to do so, undertakes to exercise the power, it will be liable for the negligent exercise of it in keeping the jail in such a filthy and unfit condition that the health of a prisoner is injured thereby.

It seems to be universally conceded that a county, by reason of the fact that it is a political division of the state, created for convenience, is under no liability in respect of torts, except as the same is imposed by statute; and for the same reason it is stated by an eminent text writer: "Such organizations as townships, school districts, road districts, and the like, though possessing corporate capacity and power to levy taxes and raise money for their respective public purposes, have been very generally considered not to be liable in case, or other form of civil action, for neglect of public duty, unless such liability be created by statute." And he adds: "A county, though it has power to erect and repair public buildings, and to levy and collect a tax for that purpose, is not responsible, in the absence of a statute making it so, for injuries resulting from the unsafe and dangerous condition of county buildings." Dill. Mun. Corp. (4th Ed.) § 963. In

our opinion, the village of Ellicottville is as much a political division of the state as is the county in which it is located; and, this being the case, no reason suggests itself to our mind why, in circumstances like those disclosed by the record in this case, it should be subject to any other or different rule of liability for the omission of a public duty. That this view of the matter is not without substantial support can be readily demonstrated by reference to adjudications which are certainly entitled to as much weight and consideration as those already cited. In Blake v. City of Pontiac, 49 Ill. App. 543, it was held that the keeping of a city jail is an act which the city is empowered to do only in its public capacity; that the same is within the police power of the city; and that consequently the city is not responsible for the wrongful acts of its agents in omitting to properly maintain that institution. In another case, arising in the same state, where it was charged that the defendant had created and maintained a "noisome, unhealthy, and uncomfortable prison," it was said by the court that "while the trustees and other officers might, by illegal and unwarranted exercise of power, render themselves individually liable, that would not render the town liable." Town of Odell v. Schroeder, 58 Ill. 353. So, too, in the states of West Virginia, Minnesota, and Kansas, it has been held that the duty and function of keeping a jail are plainly and properly governmental in character, and fall within the rule that municipal corporations .are not liable for acts done and powers exercised in that capacity. Brown's Adm'r v. Town of Guyandotte, 34 W. Va. 299, 12 S. E. 707; Gullikson v. McDonald, 62 Minn. 278, 64 N. W. 812; La Clef v. City of Concordia, 41 Kan. 323, 21 Pac. 272; City of New Kiowa v. Craven, 46 Kan. 114, 26 Pac. 426. These cases are all directly in point, and they are in perfect accord with the views to which we have given expression, as well as with the principle which we are satisfied ought to be applied to the present case, and which, when applied, necessarily leads to an affirmance of the judgment appealed from.

Judgment affirmed, with costs. All concur.