Frank Composto, J.
Plaintiff instituted this lawsuit to recover $2,615.50’ for hospital and medical services rendered to the 19-year-old son of the defendant. This case appeared on the nonjury calendar and the attorneys agreed to submit to the court the issues involved and the determination thereof on agreed statement of facts.
After considering the agreed facts, the pleadings, the examination before trial and exhibits submitted, the court finds:
The minor, while a member of the armed services, allegedly committed the crimes of assault and robbery in the County of Richmond. He was arrested by the city police and, for a period of six months while awaiting trial was a prisoner in the City of New York’s Department of Correction, House of Detention.
On August 18, 1965, while making a court appearance, he attempted to escape. The pursuing New York City policeman shot and seriously wounded him.
The police immediately took him to the plaintiff hospital where he was admitted on August 18, 1965. Six days later, on August 24,1965, ah the request of the hospital, the minor’s mother signed a hospital form, captioned “ Consent for Operation” authorizing the performance of an “ exploratory thoracotomy ”. The ‘ ‘ Consent for Operation ’ ’ is barren of any agreement to pay.
The patient recovered and on September 6 was discharged. During the 19 days’ stay in the hospital, the patient was in the prison ward of the hospital, under the watch and custody of the Department of Correction,, with a 24-hour a day police guard. Parenthetically, after being discharged he was returned to the House of Detention and thereafter pleaded guilty and was sentenced to prison.
Plaintiff seeks to recover the hospital bill on the theory of an implied contract to pay for necessities supplied to the minor.
It is urged by the plaintiff that notwithstanding the fact that the minor was in the armed services, and that at all times herein mentioned he was a prisoner in the custody of an agency of the City of New York — the police or the Department of 'Correction — that he was unemancipated and therefore the father is obligated to pay for the services rendered.
No one may cavil with the well-established principle of law based on sound public policy that parents are responsible for necessities furnished their minor unemancipated children.
Using that principle as a foundation, plaintiff relies heavily on a series of cases which held that induction into the armed services does not, in and of itself, serve to emancipate the minor. (Harwood v. Harwood, 182 Misc. 130, affd. 268 App. Div. 974, mot. for lv. to app. den. 268 App. Div. 1038; Eisenberg v. *391 Eisenberg, 59 N. Y. S. 2d 534; Wack v. Wack, 74 N. Y. S. 2d 435.)
However there is more to be considered in the instant case than the academic question of “ emancipation ”. Each of the above cases and the more recent case of Craig v. Craig (24 A D 2d 588) had its genesis in matrimonial disputes between husband and wife and resulted in separation agreements wherein the father obligated himself to pay his wife a stipulated amount for the infant during minority. In each case the infant entered the armed services and the father sought to suspend payments for the infant. The courts consistently held that under the circumstances the infants were not emancipated and that the separation agreements were valid contracts voluntarily made and may not be unilaterally varied or destroyed. In each case the father was constrained to comply with the terms of the separation agreement. (Eisenberg v. Eisenberg, 59 N. Y. S. 2d 534, supra.)
In the oft-quoted Harwood case (supra, p. 134) the court stated: “ Nevertheless, we are of the opinion that the induction of the boy into the military service of our country did not operate to suspend the contractual obligation of the father for his care and maintenance. We are not here dealing with a judicial decree which may be modified because of a change of conditions. Nor are we concerned with the obligation of the father imposed by law. We are dealing with an express contract and we cannot rewrite that contract which the parties themselves voluntarily entered into. (Schmelzel v. Schmelzel, 287 N. Y. 21; Goldman v. Goldman, 282 N. Y. 296; Stoddard v. Stoddard, 227 N. Y. 13; Galusha v. Galusha, 116 N. Y. 635, 646.) ”
A finding by this court that the minor was not emancipated because he was in service does not resolve all the issues involved.
It is undisputed that, when the minor was brought to the hospital by the police, he had been a prisoner for six months.
It is fair to assume that when the prisoner was admitted, the plaintiff hospital neither knew nor cared whether the prisoner was a minor or whether he had parents. The prisoner was brought to the hospital by the police, and the hospital in furtherance of its public dedication to minister to the sick and the wounded rendered the required services.
There is no indication in the record that the hospital relied on the father’s credit either at the time of admission or at any other time.
In analogous cases, the courts have held the city responsible for hospital services rendered its prisoners.
Crouse-Irving Hosp. v. City of Syracuse (283 App. Div. 394, 395-396) involved a dispute as to whether the city or the county *392 should pay for treatment rendered a prisoner and the court said: “ It is difficult to understand how the defendant city can avoid liability. The services having been rendered De Pasquale at the instance and request of authorized agents of the city, an implied contract to pay for these services arose if there was a legal duty upon the city to provide the attention. (Crane v. Baudoine, 55 N. Y. 256; McGuire v, Hughes, 207 N. Y. 516.) The liability follows the duty. There seems to be no question of the latter (Eddy v. Village of Ellicottville, 35 App. Div. 256; Dunham v. Village of Canisteo, 303 N. Y. 498), and we find the judgment against the City of Syracuse was proper ”. (See, also, Crouse-Irving Hosp. v. Walsh, 14 A D 2d 485.)
Arguendo, if the parents and the arrested minor had been on relief, could the hospital have sought recovery from the Welfare Department or would it be obliged to seek recovery from the city? That question was answered by the Attorney-General of the State of New York, in an opinion rendered in September, 1961. The Attorney-General was asked what ‘ ‘ governmental unit is responsible for hospital care rendered to a 17-year-old youth placed in the hospital by the Police Department of the •City of Buffalo, which had him under arrest at the time ’ ’. The Attorney-General concluded, “ That the cost of hospital care in this matter should properly be borne by the City of Buffalo ’ \ (1961 Opns. Atty. Gen. 161.)
Without determining the responsibility, if any, devolved on the military, the court finds that the plaintiff rendered services to the infant at the request of the Police Department of the City of New York.
The court finds no contractual obligation on the part of the father to pay, and furthermore, by reason of the prisoner status of the minor, the court finds no implied agreement either. Plaintiff failed to sustain its burden of proof. Judgment for the defendant.