ELIZABETH G. HUGHES, Appellant, *v.* THE COUNTY OF MONROE, Respondent.

1. MUNICIPAL CORPORATIONS — EXEMPTION FROM LIABILITY — COUNTIES. The doctrine, that where power is granted to a municipal corporation as one of the political divisions of the state, not for the immediate benefit of the municipality, but as a means to the exercise of the sovereign power for the benefit of all citizens, the corporation is not liable for non-user, nor for misuser, by the public agents, is applicable to counties, which, prior to the County Law (Chap. 686, Laws of 1892), were not municipal corporations, but were political divisions of the state and at most only *quasi* corporations.

2. Monroe County — Insane Asylum — Non-liability for Negligence — Personal Injury. An employee at the Monroe County Insane Asylum, maintained by the county for its insane, under chapter 82, Laws of 1863, and chapter 633, Laws of 1870, was injured in 1891 while operating a steam mangle in the laundry, and brought an action against the county to recover damages on the ground of negligence. *Held,* that the *status* of the county on the day of the injury, which was prior to the taking effect of the County Law of 1892, must determine its liability; and that the county, while acting under the above statutes of 1863 and 1870 in caring- for its insane, although not then a municipal corporation, was engaged as a political division of the state in the discharge of a public duty, and, consequently, was not liable to the plaintiff in damages for the negligence of its agents.

3. Revenue from Private Sources. It appeared that, when possible, the expense of maintenance was collected from the estates of lunatics in the asylum, or from those legally liable for their support, and that the asylum received a small sum annually from the sale of surplus farm products. *Held,* that the revenue derived from these sources was merely incidental and tended to some little extent to lessen the public burden assumed by the county, and was in no sense a source of profit which could be deemed to render the operation of the asylum a private business.

Reported below, 79 Hun, 120.

(Argued May 27, 1895; decided October 8, 1895.)

Appeal from order of the General Term of the Supreme Court in the fifth judicial department, made June 20, 1894, which sustained defendant's exceptions ordered to be heard in the first instance at the General Term, set aside a verdict in favor of plaintiff and granted a new trial.

The action was brought to recover damages for a personal injury sustained by the plaintiff, alleged to have been caused by the defendant's negligence.

The facts, so far as material, are set forth in the opinion.

*Eugene Van Voorhis,* for appellant. The defendant is responsible for its negligence. The defendant claims to be exempt from liability for negligence upon the ground that being one of the political subdivisions of the state of New York, it cannot be sued in tort, in the absence of express

statutory permission. This position is untenable. (1 R. S. 730, § 1 ; 1 Thomp. on Neg. 619; Dillon on Mun. Corp. [3d ed.] §§ 772, 974 ; S. & R. on Neg. § 260 ; Beach on Pub. Corp. § 745 ; *Michael* v. *Bd. of Suprs.*, 39 Hun, 47 ; *Thayer* v. *City of Boston*, 19 Pick. 511 ; *Akron* v. *McComb*, 18 Ohio, 229 ; *Rhodes* v. *Cleveland*, 10 id. 159 ; *Proprietors of Locks, etc.,* v. *Lowell*, 7 Gray, 223 ; *Hildreth* v. *Lowell*, 11 id. 345 ; *Haskell* v. *City of New Bedford*, 108 Mass. 208 ; *May* v. *Logan Co.*, 30 Fed. Rep. 250 ; *May* v. *Mercer Co.*, 30 id. 246 ; *May* v. *County of Fond du Lac*, 27 id. 691 ; *Newman* v. *Bd. of Suprs.*, 45 N. Y. 676 ; *Strough* v. *Bd. of Suprs.*, 119 id. 212.) Counties, while they may be exempt for omission to perform public duties imposed upon them as such by the state, are liable for the private wrongs they commit against others to the same extent as private corporations. The relation of master and servant existed between the defendant and plaintiff. (*Ensign* v. *Bd. Suprs.*, 25 Hun, 20 ; *Alamango* v. *Suprs.*, 25 id. 551 ; *Hill* v. *City of Boston*, 122 Mass. 358.) Where a county undertakes other matters than public functions of government, for its own advantage or emolument, or when special duties are imposed upon a county with its consent express or implied, or when a special authority is conferred . upon it at its request, it loses its character as a public corporation, and it becomes liable. (1 Thomp. on Neg. 618 ; 1 S. & R. on Neg. §§ 255–259 ; Wood on Mast. & Serv. § 462 ; *Maxmilian* v. *Mayor, etc.*, 62 N. Y. 160 ; *Bigelow* v. *Randolph*, 14 Gray, 543 ; *Jones* v. *New Haven*, 34 Conn. 1 ; *Perkins* v. *Lawrence*, 136 Mass. 305 ; *Hannon* v. *St. Louis Co.*, 62 Mo. 313 ; *Bailey* v. *Mayor*, 3 Hill, 531 ; *Oliver* v. *Worcester*, 102 Mass. 489 ; *People* v. *Ingersoll*, 58 N. Y. 29 ; Laws of 1874, chap. 446 ; Laws of 1865, chap. 342 ; Laws of 1842, chap. 132 ; Laws of 1863, chap. 82 ; Laws of 1891, chap. 335.) If managing an asylum for the pauper insane of Monroe county can be considered a public duty of the county, managing an asylum for the care of other insane patients certainly cannot be the duty of the county. (Laws of 1863, chap. 82, § 7 ; *Neff* v. *Wellesley*, 148 Mass. 493 ;

*Oliver* v. *City of Worcester*, 102 id. 489 ; *Worden* v. *City of New Bedford*, 131 id. 23 ; *Tindley* v. *City of Salem*, 137 id. 172 ; *Eastman* v. *Meredith*, 36 N. H. 285.) There is no ground for claiming that the warden of this asylum was an independent officer, over whom the defendant had no control. He was elected by its board of supervisors for a definite term and subject to removal by them for cause. His duties were, to some extent, prescribed by statute, but that is the case with the officers of all chartered municipal corporations. In this case the statute was really a special charter. He was the servant of the county and not of the state, and the defendant is certainly liable for his acts within the scope of his duties. (Dillon on Mun. Corp. [3d ed.] § 974 ; *N. Y. & B. S. M.* v. *City of Brooklyn*, 71 N. Y. 584 ; *Appleton* v. *Water Comrs.*, 2 Hill, 433 ; *Bailey* v. *Mayor*, 3 id. 531.) There can be no question but that it was the duty of the defendant as master, to give suitable and proper instruction to the plaintiff as to the manner of doing her work. This duty could not be delegated so as to exempt the master from liability. For the omission to give proper instructions the defendant is liable. (*Brennan* v. *Gordon*, 118 N. Y. 489 ; 13 Daly, 208 ; Laws of 1890, chap. 398, § 12 ; *Kingsley* v. *Pratt*, 75 Hun, 323 ; *Cobb* v. *Welcher*, Id. 283 ; *Hickey* v. *Taaffe*, 105 N. Y. 26 ; *Simpson* v. *N. Y. R. Co.*, 80 Hun, 415.)

*F. E. Drake* for respondent. The county of Monroe is not liable to an action by a private person to recover damages resulting from negligence, unless the action is given by statute. (Dillon on Mun. Corp. [4th ed.] § 963 ; Addison on Torts, 1298, § 1526 ; *Maxmilian* v. *Mayor, etc.*, 62 N. Y. 160 ; *Ensign* v. *Bd. Suprs.*, 25 Hun, 20 ; *Alamango* v. *Bd. Suprs.*, 25 id. 551 ; *Symonds* v. *Bd. Suprs.*, 71 Ill. 355 ; *Hollenbeck* v. *Co. of Winnebago*, 95 id. 355 ; *Bd. of Comrs.* v. *Mighels*, 7 Ohio, 109 ; *Summers* v. *Bd. Comrs.*, 103 Ind. 262 ; *Downing* v. *Mason Co.*, 87 Ky. 208 ; *Dodsdall* v. *Co. of Olmstead*, 30 Minn. 96 ; *Brabham* v. *Suprs.*, 54 Miss. 363 ; *Kincaid* v. *Hardin Co.*, 53 Iowa, 430 ; *Sherbourne* v. *Yuba*

*Co.*, 21 Cal. 113; *Barnett* v. *Co. of Contra Costa*, 67 id. 77; *Crowell* v. *Conoma Co.*, 25 id. 313; *Reardon* v. *St. Louis Co.*, 36 Mo. 555; *Pundman* v. *St. Charles Co.*, 110 id. 594; *Western College* v. *City of Cleveland*, 12 Ohio, 375; *Ulrich* v. *City of St. Louis*, 112 Mo. 138; *Ham* v. *Mayor, etc.*, 70 N. Y. 459; *Ogg* v. *City of Lansing*, 35 Iowa, 495; *Caldwell* v. *City of Boone*, 51 id. 687; *Blake* v. *City of Pontiac*, 49 Ill. App. 543; *Butrick* v. *City of Lowell*, 1 Allen, 172; *Wheeler* v. *City of Cincinnati*, 19 Ohio St. 19; *Brinkmeyer* v. *City of Evansville*, 29 Ind. 187; *Tooney* v. *City of Albany*, 38 N. Y. S. R. 91, 92; *Smith* v. *City of Rochester*, 76 N. Y. 506; *Hafford* v. *City of New Bedford*, 16 Gray, 297; *Fisher* v. *City of Boston*, 104 Mass. 87; *Pettingel* v. *City of Chelsea*, 161 id. 368; *Howard* v. *City of Worcester*, 153 id. 426; *Finch* v. *Bd. of Education*, 30 Ohio St. 37; *Hill* v. *City of Boston*, 122 Mass. 344; *McKay* v. *City of Buffalo*, 9 Hun, 401; 74 N. Y. 619; *Givens* v. *City of Paris*, 5 Tex. Civ. App. 705; *Whelfield* v. *City of Paris*, 84 Tex. 432; *Curren* v. *City of Boston*, 151 Mass. 505; *Benton* v. *City Hospital*, 140 id. 13; 1 R. S. chap. 20, tit. 3, §§ 1–4, 13; Laws of 1874, chap. 466, §§ 3, 13, 17; Laws of 1884, chap. 446, tit. 3, § 22; Id. tit. 4, § 4; Id. tit. 5, § 2; Id. tit. 6, § 3; Id. tit. 7, § 3; Laws of 1887, chap. 375, § 12; Laws of 1870, chaps. 633, 661; Laws of 1863, chap. 82, § 5; *Bamber* v. *City of Rochester*, 26 Hun, 587; *People ex rel.* v. *Purdy*, 126 N. Y. 679; *Downs* v. *H. Hospital*, 25 L. R. Ann. 602; *McDonald* v. *M. G. Hospital*, 129 Mass. 432; *Murtaugh* v. *City of St. Louis*, 44 Mo. 479.) There is no evidence of any negligence of the defendant, or of the officers in charge of the asylum from which plaintiff's injury resulted. (*Hickey* v. *Taaffe*, 105 N. Y. 26; *Sweeney* v. *B. & J. E. Co.*, 101 id. 520; *Harley* v. *B. C. M. Co.*, 142 id. 31; *Sisco* v. *L. & H. R. R. Co.*, 145 id. 296; *French* v. *Aulls*, 72 Hun, 442; *Pauley* v. *S. G. & L. Works*, 131 N. Y. 90; *Babcock* v. *F. R. R. Co.*, 140 id. 308; *Marsh* v. *Chickering*, 101 id. 396; Thomp. on Neg. 1009; *Benfield* v. *V. O. Co.*, 75 Hun, 209.) The injury sus-

tained by plaintiff resulted from conditions, the risk of which was assumed by plaintiff when she entered into the employment of operating the mangle. (*Hickey* v. *Taaffe*, 105 N. Y. 26; *Buckley* v. *G. P. & R. M. Co.*, 113 id. 540; *Ogley* v. *Miles*, 139 id. 458; *Appel* v. *B., N. Y. & P. R. R. Co.*, 111 id. 550; *Crown* v. *Orr*, 140 id. 450; *De Forest* v. *Jewett*, 88 id. 264; *Cowhill* v. *Roberts*, 71 Hun, 127; *French* v. *Aulls*, 79 N. Y. 442.) Not only does plaintiff fail to show herself free from contributory negligence, but the facts tend strongly to show that the accident could have happened only through her own carelessness. (*Babcock* v. *F. R. R. Co.*, 130 N. Y. 505.)

Bartlett, J. The plaintiff appeals from an order, made on a motion heard at the General Term in the first instance, granting a new trial after verdict at the Monroe Circuit in her favor.

The plaintiff, an employee at the Monroe County Insane Asylum, was severely injured while operating a machine known as a steam mangle, which was used in the laundry.

At the trial it was insisted on behalf of the defendant that the county of Monroe was not liable in any event; that, assuming its liability, the plaintiff had failed to make out a cause of action.

As we are of opinion that the county of Monroe is not liable under the facts as disclosed in this record, it is unnecessary to determine whether the plaintiff was entitled to go to the jury.

The plaintiff was injured February 11, 1891. Before this action was commenced the County Law of 1892 was in force, but it is unnecessary to examine its provisions, as the *status* of the county of Monroe on the 11th day of February, 1891, must determine its liability.

Prior to the year 1863 the county of Monroe cared in part for its insane in a department of the county poorhouse. By chapter 82, Laws of 1863, it was enacted that the insane asylum of the county of Monroe should be a separate and dis-

tinct institution from that of the Monroe county poorhouse, and the board of supervisors were placed in control and authorized to elect a warden, who was to hold office for three years, and a board of three trustees for a like term.

The warden was constituted the chief officer of the asylum, subject to the regulations established by the board of supervisors; all purchases for the asylum were to be made by the warden under the direction of the trustees; all contracts with the attendants and assistants were to be made in the official names of the trustees; the warden was also required to make out and deliver to the trustees annually an inventory of all property belonging to the asylum; the warden was also authorized to make contracts for the support of insane persons of the county, and by the direction of the board of supervisors or the trustees to demand from the state lunatic asylum all persons who were chargeable to the county of Monroe or to any town or city in the county.

It was further provided that no insane person residing in the county of Monroe and likely to become a county charge should thereafter be admitted to the state lunatic asylum without the written consent of the trustees of the Monroe county asylum or the chairman of the board of supervisors.

By chapter 633, Laws of 1870, it was made the duty of the trustees to determine all questions in relation to the indigent insane as to whether their maintenance was properly a charge upon a specified town within the county of Monroe, or upon the city of Rochester, or upon the county of Monroe; the trustees were also empowered when any lunatic, not indigent, was placed in the asylum, to charge his estate, or the person legally responsible, for his maintenance and to collect the same.

It will thus be observed that the county of Monroe, being legally chargeable as one of the political divisions of the state with the care of its insane, saw fit in 1863, with the consent of the legislature, to undertake the discharge of that duty through the instrumentality of a county asylum.

In other words, the county of Monroe from that time shared

with the state the burden of caring for the insane, withdrew from the state lunatic asylum all indigent insane for whose maintenance it was liable and secured legislation requiring all the pauper insane of the county to enter its own asylum.

When an insane person is deprived of his liberty and the custody of his property, placed in close confinement, and separated from family and friends, it is an extreme exercise of the police power by the state, or some political division thereof, for the protection of society and to promote the best interests of the unfortunate victim of mental alienation.

It, therefore, follows that the county of Monroe while acting under the statutes referred to, was engaged in the discharge of a most important public duty and, consequently, not liable to the plaintiff in damages by reason of her injuries. (Dillon on Municipal Corporations [4th edition], sec. 693; Addison on Torts [Banks' ed.], p. 1298, section 1526.)

In *Maxmilian* v. *Mayor of New York* (62 N. Y. 160) this court laid down the rules of law that control this case. The plaintiff sought to recover damages for the death of her intestate, who was killed by an ambulance wagon which was driven by an employee of the commissioners of charities and corrections.

It was held that when the city of New York, by legislative enactment, was required to elect or appoint an officer to perform a public duty laid not upon it, but upon the officer, in which it had no private interest, and from which it derived no special advantage, such officer is not a servant or agent of the municipality for whose acts it is liable even though the officer had in charge and was negligently using corporate property.

Judge FOLGER said (page 164): "There are two kinds of duties which are imposed upon municipal corporations; one is of that kind which arises from the grant of a special power in the exercise of which the municipality is as a legal individual; the other is of that kind which arises, or is implied, from the use of political rights under the general law, under the exercise of which it is as a sovereign. The former power is

private and is used for private purposes; the latter is public and is used for public purposes. (*Lloyd* v. *The Mayor*, 5 N. Y. 374.)  *  *  *  But where the power is intrusted to it as one of the political divisions of the state and is conferred not for the immediate benefit of the municipality, but as a means to the exercise of the sovereign power for the benefit of all citizens, the corporation is not liable for non-user, nor for misuser by the public agents. (*Eastman* v. *Meredith*, 36 N. H. 284.)"

In the case at bar, it is true, we are not dealing with a municipal corporation, for in February, 1891, the county of Monroe was a political division of the state, and at most only a *quasi* corporation; but, nevertheless, the reasoning in the opinion just cited is applicable.  .

By the act of 1863 the county of Monroe, through its board of supervisors, was required by the legislature to elect a warden and trustees of its insane asylum to perform an important public duty in which it had no private interest, and from which it derived no special advantage. The warden and trustees, when so elected, were in no legal sense the agents of the county of Monroe, but were public officers engaged in the discharge of duties which involved the exercise of the police power, and in which the general public were interested.

While the county of Monroe, by its board of supervisors, was empowered to enact general rules and regulations for the government of the asylum, and to elect its warden and trustees, it had no power to interfere directly with the management of the institution unless the warden so elected was guilty of misconduct, when he could be removed by the board of supervisors.

The non-liability of counties and also of municipal and other corporations having special charters for the acts of their officers when engaged in the discharge of public duties, and to that extent exercising acts of sovereignty, is established by many cases. (*Ensign* v. *Supervisors of Livingston County*, 25 Hun, 20; *Alamango* v. *Supervisors of Albany County*, 25 id. 551; *Ham* v. *The Mayor*, 70 N. Y. 459; *Smith* v. *City*

8

*of Rochester*, 76 id. 506 ; *Benton* v. *Trustees of Boston City Hospital*, 140 Mass. 13 ; *Curran* v. *The City of Boston*, 151 id. 505.)

The learned counsel for the plaintiff, evidently appreciating the force of the general rule to which we have adverted, sought to show that the case at bar was, by reason of special facts, not within its operation.

It is insisted that the defendant, at the time of this accident, was not only caring for the pauper insane of Monroe county, but also for other patients through contracts made for that purpose.

There is no evidence that the county of Monroe was caring for insane patients not residing in the county, for a consideration, but if such were the case it would be without warrant of law, as we think a fair construction of section seven of chapter 82 of Laws of 1863, limits the contracts to be made "to any individual of said county" who wishes to contract as to the care of the insane of Monroe county.

There can be no doubt that the committee of a lunatic, or any one legally liable to support him, should, in the first instance, be required to pay for his maintenance, and the income derived in this manner is in no sense a source of profit to the county so that it would be deemed in law as conducting a private business.

We may also consider in this connection the suggestion that as the asylum received a small sum annually from the sale of surplus farm products it was to be treated as engaged in a private enterprise resulting in profits.

The revenue derived from both of the sources referred to is merely incidental and tends to some little extent to lessen the public burden assumed by the county of Monroe. (*Curran* v. *City of Boston*, 151 Mass. 505, 510; *Alamanyo* v. *Board of Supervisors of Albany County*, 25 Hun, 551, 552, 553; *People ex rel. Society of the New York Hospital* v. *Purdy*, 126 N. Y. 679, and 58 Hun, 386.)

We have considered the other suggestions of counsel for appellant contained in his brief and consulted the authorities

to which he refers, but find nothing to take this case from the operation of the general rule.

The order of the General Term should be affirmed and under the stipulation of plaintiff judgment absolute ordered for the defendant dismissing the complaint on the merits, with costs to defendant in all the courts.

All concur, except HAIGHT, J., not sitting.

Ordered accordingly.