(33 App. Div. 88.)

### REYNOLDS v. BOARD OF EDUCATION OF UNION FREE SCHOOL DIST. OF CITY OF LITTLE FALLS.

(Supreme Court, Appellate Division, Fourth Department. July 26, 1898.)

1. SCHOOLS—BOARD OF EDUCATION—LIABILITY FOR ACTS OF ATTENDANCE OFFICER.

Since the duties of an attendance officer, under Laws 1894, c. 671 (Compulsory Education Act), are prescribed by the act, and power only to appoint and remove such officer and prescribe duties not inconsistent with the act is reserved to the board of education, the rule of respondeat superior does not apply, and the board is not liable for misuser by such officer.

2. SAME—DUTY OF BOARD TO PRESCRIBE RULES.

Under Laws 1894, c. 671, providing that a school board "shall" appoint attendance officers, and fix their compensation, and "may" make rules and regulations for the performance thereof, the making of such rules is discretionary.

3. SAME—ATTENDANCE OFFICER—SCOPE OF AUTHORITY.

A school child was not a truant, and, at the time of his arrest by the attendance officer, was in the presence of his father, and was absent from school with his permission, to the officer's knowledge. On breaking away from the officer, he was pursued by the latter, against the express command of the father, at a dangerous point across a railroad track, in the face of an approaching train, and was killed. *Held*, in an action for damages against the board of education, that the act of the officer was outside of the scope of his authority, and the board of education was not liable.

Appeal from special term.

Action by John E. Reynolds, administrator, against the board of education of Union Free school district of the city of Little Falls. From an interlocutory judgment overruling a general demurrer to the complaint, defendant appeals. Reversed.

The complaint alleged: That Charles E. Reynolds, a boy of about 11 years of age (the deceased), was a son of the plaintiff, and came to his death on the 28th day of April, 1897, as a result of the defendant's negligence. That the defendant (the appellant) is a domestic corporation, organized and created under the charter of the city of Little Falls and the consolidated school law of this state. That, under the provisions of the compulsory education school law, it was the duty of the defendant, at all times mentioned, to appoint and remove at pleasure one or more attendance officers of such city, and to fix their compensation, prescribe their duties not inconsistent with the school law, and to make rules and regulations for the performance thereof by the said officer. That in the month of April, 1897, the defendant appointed one Alonzo Murray as such attendance officer, and fixed his compensation, and Murray entered upon such employment. That in said month of April, and for several months or years prior thereto, the said Charles E. Reynolds was a pupil and in regular attendance upon the public schools of the defendant corporation; and the complaint then proceeds as follows: "That on the 28th day of said month the said Charles remained out of school at the request and by direction of his parents, for the purpose of assisting in the care of the younger children on that day, during the absence of his mother from the city. That he sent word by a schoolmate to his teacher accordingly, and such ex-

cuse was duly received. That, in the afternoon of the said day, the said Alonzo Murray, in the course of his employment as such attendance officer, inquired of the said Charles why he was out of school, and was informed substantially as above stated. That shortly thereafter the said Charles went to his father. the plaintiff herein, who was employed as a flagman upon the West Shore Railroad, at the Jefferson street crossing, in the said city of Little Falls, and told him of such occurrence, and remained there with him. (6) That a few minutes later, being about 2:40 p. m., as the plaintiff was in the act of lowering the railroad gates of the said crossing for an approaching freight train, and while the said Charles was in the immediate care and custody of his said father, the said Alonzo Murray, acting in the scope of his employment as the agent and servant of the defendant, suddenly appeared, and seized and arrested the said Charles as an alleged truant, and wrongfully and unlawfully assaulted him, and dragged him into the middle of the road, in order to take him into school, although ordered by the plaintiff to let the boy alone. That the said Charles thereupon broke away from the said Murray, of whom he was much afraid, and, in order to escape, ran under the gates which had been lowered at said crossing; whereupon the said Murray, continuing such assault, pursued him under said gates, and across the railroad tracks, to the other side, and the said Charles, being in fear of further assault by said Murray, and being thereby greatly terrified, turned. to come back to his father, and as he so ran, the said Murray still pursuing him, the said freight train, which at that instant reached the crossing, struck the said Charles, and he thereby sustained injuries of which, within a few hours, he died. (7) That the death of the said Charles was caused without fault or negligence on his part, by the wrongful and negligent acts of the defendant and its servants and agents, as follows, as this plaintiff is informed and believes: (a) The defendant negligently discharged its duty in appointing and continuing to employ as an attendance officer the said Alonzo Murray, who was an unfit and incompetent person for such position, and was not possessed of such sound mind and memory as were reasonably requisite. (b) The defendant negligently omitted to prescribe the duties of such attendance officer, or to make reasonable and proper rules and regulations for the performance thereof, or properly to supervise the enforcement of the law. (c) The said Murray, as such servant and agent, negligently and wrongfully chased the said Charles to his death." Judgment was demanded for $10,000.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

S. H. Newberry, for appellant.
Edward P. White, for respondent.

WARD, J. The defendant is a body corporate, created under the consolidated school law of this state (Laws 1894, c. 671). Sections 3 and 4 of title 16 of that law require, in substance, that every child between the ages of 8 and 16 years, in proper physical and mental condition to attend school, shall regularly attend upon instruction at the school in which at least the common branches of an English education are taught, or upon equivalent instruction by a competent teacher for a certain period specified in the law; that the persons in parental relations to the child shall cause the person to so attend.

By the seventh section of the law it is provided as follows:

"The school authorities of each city and Union free school district shall appoint and remove at pleasure one or more attendance officer of such city or district and shall fix their compensation, and may prescribe their duties not inconsistent with this act, and may make rules and regulations for the performance thereof, and the superintendent of schools of such city or district, if there be one, shall supervise the enforcement of this act within the said city or district."

Section 8 provides that:

"The attendance officer may arrest without warrant any child between eight and sixteen years of age found away from his home who is then a truant from instruction upon which he is lawfully required to attend within the city or district of such attendance officer. He shall forthwith deliver a child so arrested either to the custody of a person in parental relation to the child or to a teacher from whom such child is then a truant, or in the case of habitual and incorrigible truants to bring them before a police magistrate for commitment by him to a truant school," etc.

The theory upon which the plaintiff seeks to recover in this action is that Murray bore such a relation to the defendant as his acts were the acts of the defendant; that he was an improper person to be appointed to the positon of attendance officer, and that he executed his duties in attempting to arrest the deceased in an unlawful and negligent manner, and for these acts the defendant corporation is responsible; that the statute has created the defendant a corporation, and it is subject to the liabilities of other corporations whose employés, agents, or servants are guilty of negligent acts resulting in injury to others.

The attendance officer is a creation of the statute. The board of education is required to make the appointment. Though a corporation, the board of education is only such to discharge the important duties connected with education that the statute requires. It has no private interests, and derives no special benefit or advantage from its corporate capacity, but its duties are essentially and exclusively of a public character. The rule of respondeat superior does not apply to the relations between the board of education and the attendance officer. That rule is based upon the right which the employer has to select his servants, to discharge them if not competent or skillful or well behaved, and to direct and control them while in his employ. Maxmilian v. Mayor, etc., 62 N. Y. 163. The duties of the attendance officer are prescribed by the statute, and not by the board of education, although the board may make regulations governing his conduct to some extent as the statute provides. The cases bearing upon this subject found in the Reports relate mainly to municipal corporation, and point out the dual relations of those corporations to the public and to private interests; and, in so far as they touch upon the public duties of the corporations, they are instructive upon the subject we are considering. These cases define two kinds of duties that are imposed upon a municipal corporation. One is that kind which arises from a grant of a special power in the exercise of which the municipality is as a legal individual; the other is that kind which arises or is implied from the use of political rights under the general law in the exercise of which it is a sovereign. The former power is private, and is used for private purposes; the latter is public, and is used for public purposes. The former is not held by the municipality as one of the political divisions of the state; the latter is. Where the power is intrusted to the corporation as one of the political divisions of the state, and is conferred, not for the immediate benefit of the municipality, but as a means to the exercise of the sovereign power, for the benefit of all citizens, the corporation is not liable for nonuser nor for misuser by the public

agents. Where the duties which are imposed upon the municipality are of the latter class, they are generally to be performed by officers who, though deriving their appointment from the corporation itself, through the nomination of some of its executive agents by a power devolved thereon as a convenient mode of exercising the function of government, are yet the officers, and hence the servants, of the public at large; and they are not under the control of the municipality. They are not its agents or servants, but are public officers, agents, and servants of the public at large; and the corporation is not responsible for their acts or omissions, nor for the acts or omissions of their subordinates by them appointed. Maxmilian v. Mayor, etc., 62 N. Y. 164, 165; Eastman v. Meredith, 36 N. H. 284; Fisher v. City of Boston, 104 Mass. 87; Lloyd v. City of New York, 5 N. Y. 374; Bailey v. Mayor, etc., 3 Hill, 538 et seq.; Hughes v. Monroe Co., 147 N. Y. 49, 41 N. E. 407; Markey v. Queens Co., 154 N. Y. 675, 49 N. E. 71; Donovan v. Board of Education, 85 N. Y. 117–122; Springfield Fire & Marine Ins. Co. v. Village of Keeseville, 148 N. Y. 46, 42 N. E. 405; Woodhull v. City of New York, 76 Hun, 390, 28 N. Y. Supp. 120; McKay v. City of Buffalo, 9 Hun, 401, affirmed 74 N. Y. 619; O'Meara v. Mayor, etc., 1 Daly, 425; New York & B. S. M. & L. Co. v. City of Brooklyn, 71 N. Y. 580; McDonald v. General Hospital, 120 Mass. 432; Hill v. City of Boston, 122 Mass. 344.

Donovan v. Board of Education, supra, was an action brought against the board by the city of New York, to recover damages for injuries sustained by the plaintiff by falling into an excavation in the yard of premises occupied as a ward school. The plaintiff, at the time of the accident, was a scholar attending the school. The excavation into which the plaintiff fell communicated with the cellar of the school building, and was provided with an ordinary grating; and the evidence tended to show that the opening had been negligently left uncovered at the time of the accident. The premises were in the special care and keeping of the school trustees of the ward where the building was located, who were authorized to appoint janitors for the building, and to employ masons in connection with the work. The accident was due to the negligence of the janitor or of the masons. Under the law, the board of education had appointed the ward trustees, and it was sought to hold the board responsible by reason of that fact, and of its general superintendence of the affairs of the city schools. Andrews, J., said:

"But this did not make them [the trustees] servants or agents of the board which appointed them. Their general authority and their power to make repairs was not derived from the defendant, but from the law."

In addition to the cases cited, we refer to recent decisions in other states in which the corporation or municipality has been held not responsible for negligent or other acts causing injury to third persons: For negligently maintaining its lock-up in a defective condition, whereby a prisoner was injured. Gullikson v. McDonald (Minn.) 64 N. W. 812. For the acts of a police officer while performing his duty in making an arrest of one charged with the violation of an ordinance. Vaughtman v. Town of Waterloo (Ind. App.) 43 N. E. 476. Not liable in damages for the death of one convicted in a cor-

poration court, and sentenced to work upon the public streets, although his death was occasioned while the convict was engaged in such work, and resulted from negligence on the part of the foreman who had been placed by the municipal authorities in charge thereof, and from the failure of such foreman to provide the convict after his injury with proper medical attention and treatment. Nisbet v. City of Atlanta (Ga.) 25 S. E. 173. Not liable for damages caused by the enactment and enforcement of a valid ordinance, though the ordinance shows an abuse by the municipality of a discretionary power with which it is vested. Rosenbaum v. City of Newbern (N. C.) 24 S. E. 1. A city not liable for damages to a property owner because it failed to prevent the erection of a wooden building on an adjoining lot, in violation of an ordinance. Harman v. City of St. Louis (Mo. Sup.) 38 S. W. 1102. A municipality is not liable, in the absence of a statutory provision, for damages sustained by the tort of its offices. Parks v. City Council (S. C.) 21 S. E. 540. City not liable for unlawfully arresting and imprisoning a person, and incarcerating him in a filthy and improperly built and kept calaboose, since the municipality can only act through its officers and agents, and is not responsible for their illegal acts in attempting to exercise police powers. Blake v. City of Pontiac, 49 Ill. App. 543.

The learned counsel for the plaintiff strenuously insists that allegations in the complaint charge the defendant itself with specific negligence in appointing an incompetent person as attendance officer, and in failing to make proper regulations to govern his conduct, and this is the serious point in the case. The trend of the decisions we have cited sustain the proposition that a body corporate of the character of this defendant, whose duties are of a public character only, is not liable for negligence which results from the execution of a statutory duty, unless the liability is expressly created by statute. This would seem to be the general rule. The exceptions to that rule generally arise in street and sewer cases, where the negligence is directly traceable to the act of the corporation, or the corporation has created a nuisance, as illustrated in Seifert v. City of Brooklyn, 101 N. Y. 136, 4 N. E. 321. The statute we have quoted provides that the defendant "may make rules and regulations for the performance" of the attendance officer's duties; thus leaving the matter discretionary with the board. But it is insisted that the word "may" should in this regard be construed as "must," and that the duty of making the regulation was imperative, and that the courts have so held in cases where public duties were imposed. This rule does not prevail in a case where the statute itself distinguishes, as this does, between what is mandatory and what is discretionary. Thus, it is provided that the school authorities "shall appoint and remove one or more attendance officers, * * * and shall fix their compensation, and may prescribe their duties not inconsistent with this act, and may make rules and regulations for the performance thereof." So far, therefore, as the allegation of negligence, resting upon the failure to prescribe the duties and make rules and regulations, is concerned, we may dismiss it from our consideration; and all that remains of this feature of the case is the allegation of negligence in appointing Murray, who was an unfit and in-

competent person for the position. These are general allegations and conclusions. It does not appear from the complaint in what respect Murray was incompetent further than that he was not possessed of such sound mind and memory as was reasonably requisite. This allegation is also vague and a conclusion; and it is doubtful whether these allegations are admitted by the demurrer.

In McDonald v. General Hospital, supra, a hospital patient sued the corporation for unskillful surgical treatment by a house pupil, a functionary similar to a surgical interne. There was no evidence of any want of care in selecting the house pupil, and the court held that without such evidence the action could not be maintained, and at the same time strongly intimated an opinion that it could not be maintained even with such evidence, for the reason that the corporation could not be held to have agreed to do more than to furnish hospital accommodation, which the plaintiff had had, and also for the further reason that any judgment recovered against the corporation could only be satisfied out of the funds dedicated to the charity, which could not be lawfully used to pay it. The difficulty of enforcing a collection of any judgment that might be recovered in this action, the members of the board of education not being personally liable in this action, exists here as well as in the Massachusetts case. In Perry v. House of Refuge, 63 Md. 20, it was held (citing this Massachusetts case) that the House of Refuge, founded for the care, custody, and reformation of convicts, vagrants, and incorrigible youths, being a charitable organization, was not liable for damages for an assault by one of its officers on an inmate. The difficulty with this branch of the plaintiff's contention is that the statute providing for the appointment of these attendance officers, and in defining their relations to the defendant, has failed to make the defendant responsible for any negligence which it may have committed in reference to the appointment and control of these officers. In a later Massachusetts case (Hill v. City of Boston, supra), which was an action for an injury to a child while attending a public school, which the city was bound by law to keep and maintain, the staircase was winding, and the railing thereof so low as to be dangerous, whereby the child fell over the railing, and was hurt. It was charged that the city improperly constructed the school house, and had knowledge or notice of its dangerous condition. The duty to provide and maintain the school houses was imposed by general statutes upon all towns and cities. Gray, C. J., in writing the opinion of the court, after an exhaustive review of the decisions of England, and in various states of this Union, laid down the broad proposition that the plaintiff could not recover, and rested the decision upon the doctrine that no private action, unless authorized by express statute, could be maintained against the city for the neglect of a public duty imposed upon it by law for the benefit of the public, and from the performance of which the corporation receives no profit or advantage.

This conclusion seems well supported by the authorities cited by the learned court, and would seem to dispose of the plaintiff's contention with reference to the principal point urged upon this review. But another insuperable objection to the plaintiff's recovery in this

action appears in another feature of the case. The complaint clearly shows that the deceased was not a truant; that he was not liable to arrest, and at the time of the arrest was in the presence of his father, and was absent from school with his permission, to the knowledge of the officer. His act was a bald, naked trespass. The pursuit of this child in the face of an approaching train, at this dangerous point, across the railroad track, against the express commands of the child's father, was not only an unauthorized, but a criminal, act; and it cannot be claimed that the officer, in doing the things enumerated in the complaint, was acting within the scope of his authority; and, in this view of the case, it is unimportant whether Murray was incompetent to fill the position to which he was appointed.

The interlocutory judgment should be reversed, and the demurrer sustained, with costs, with leave to the plaintiff, upon the payment of such costs, to serve an amended complaint within 20 days. All concur.