(96 App. Div. 598.)

TOWN OF SOUTHEAST v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. July 28, 1904.)

1. MUNICIPAL CORPORATIONS—NEGLIGENCE—PLEADING AND PROOF.

In an action by one municipal corporation against another for damages, based on the breaking of a dam, which resulted in injury to plaintiff's bridges and highways, where the complaint, in charging negligence, alleged that after the erection of the dam "a wood superstructure was constructed by the defendant along the crest of the spillway, and in such an insecure and negligent manner as to be unable to withstand floods," the plaintiff was not limited to proof of insecurity incident to the wooden superstructure alone, but was entitled to show that the part of the dam into which the superstructure was anchored was incapable of holding it under ordinary conditions, and that that fact was observable to ordinary inspection.

2. SAME—DAMAGE TO HIGHWAYS—RIGHT TO SUE.

An action for injury to the bridges and highways of a town is properly brought in the name of the town.

3. SAME—LIABILITY FOR NEGLIGENCE—CONSTITUTIONAL LAW.

A city is not relieved from liability for its negligence in connection with the construction of a dam from which it secures its water supply on the ground that the supplying of water is a governmental function, in view of Const. art. 1, § 6, providing that no person shall be deprived of life, liberty, or property without due process of law.

Appeal from Trial Term, Putnam County.

Action by the town of Southeast against the city of New York. From a judgment in favor of plaintiff for $3,433.12, and an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Theodore Connoly (Terence Farley, on the brief), for appellant.
Abram J. Miller, for respondent.

HIRSCHBERG, P. J.  The plaintiff has recovered judgment for damages to certain of its bridges and highways in Putnam county, occasioned by the giving way of a portion of a reservoir dam belonging to the defendant, as a part of its water supply system in that county. The dam is known as the "Sodon Dam," and was built in the year 1892, pursuant to the provisions of chapter 490, p. 666, of the Laws of 1883. It created what is known as "Double Reservoir I"—two reservoirs connected by a tunnel—located on the East Branch of the Croton river. In May, 1901, the defendant increased the height of the dam by placing flashboards upon the crest of the spillway, so as to impound in the reservoir 500,000,000 more gallons of water; and, as a consequence, during the following December, in an ordinary flood, the flashboards, with a portion of the masonry of the dam, were carried away, suddenly precipitating a large quantity of water upon the highways and against the bridges in question, and inflicting the damage of which the plaintiff complains.

There is really little dispute between the parties as to what caused the giving way of the structure.  Witnesses on either side were allowed to testify as to the propriety and safety of the contrivance adopted by the defendant to increase the capacity of the reservoir, and, while they differ in that regard, they seem to unite in stating the cause of the casualty. The flashboards consisted of a series of two timbers, laid one on top of the other, each 12 by 12 inches in thickness and 30 feet in length, bolted together into the coping stone on top of the spillway, braced with iron braces, and sheathed with planking at the seam.  The plaintiff's expert testified, in effect, that, if the cement under the coping stones was intact, the superstructure would be sufficient to sustain the pressure of the additional water impounded, but that it would be overthrown if the water got under the coping, as it could do in the absence of sufficient cement.  The defendant's expert by whose direction the flashboards had been placed upon the dam testified that the construction was perfectly safe and proper, and that it would have held, had the coping stones been properly imbedded, but that there was no cement in the hollow under part of these stones, and, as a result, the water got underneath, and slid the coping stones and the flashboards off together.

The rulings of the learned trial justice may not have been strictly accurate on this branch of the case, but, in view of the harmony of the witnesses upon the main point, that fact need not disturb the result. Indeed, no error in ruling is found which could have influenced the verdict, or which seems to require a reversal.  The learned counsel for the appellant insist, however, that as the negligence charged in the complaint is "that after the erection of the said dam a wood superstructure was constructed by the defendant along the crest of the spillway thereof, and in such an insecure and negligent manner as to be unable to withstand floods," the plaintiff's cause of action is not made out, unless the proof shows that the insecurity was incident to the wooden superstructure alone.  This view is too narrow.  The dam and spillway as originally constructed had proven adequate for years to resist the pressure of the water, and no reason is furnished, calculated to occasion doubt but that they would have continued to do so, had they been left as originally designed.  The coping stones, in other words,

were sufficiently imbedded to constitute a secure crest for the dam, and
to permit the safe overflow of all the water which their resistance could
possibly raise in the reservoir. When the defendant saw fit to raise the
dam by constructing something else on top of it, a jury might very
well say that ordinary care required that the work should be done with
a view to the capacity of the dam to hold whatever water might be re-
tained by the superstructure built upon it. If it be true that the part of
the dam into which the superstructure was anchored was incapable of
holding it under ordinary conditions, and that fact was observable to
ordinary inspection, then it may be fairly said that the superstructure
was constructed in an insecure and negligent manner, notwithstanding
that the only physical defect may have been in the insecure foundation.
The insecurity would exist in the dangerous combination, and the negli-
gence in the imprudence which created it without the exercise of that
ordinary care in prior inspection which it may be presumed would have
disclosed the fact of the risk.

The action is properly brought in the name of the town. Town of
Ft. Covington v. U. S. & C. R. R. Co., 8 App. Div. 223, 40 N. Y. Supp.
313, affirmed in 156 N. Y. 702, 51 N. E. 1094; Town of Palatine v.
Canajoharie W. S. Co., 90 App. Div. 548, 86 N. Y. Supp. 412. I think,
also, that the proof is prima facie sufficient to establish the plaintiff's cor-
porate interest in the highways and bridges which are the subject of
the action, with respect to the damages sued for.

A more difficult question is presented by the appellant's claim that,
inasmuch as the supply of water to the defendant municipality is a
governmental function, no action will lie for the consequences of negli-
gence in any feature connected with its discharge. I do not think,
however, that any case can be found in this state which absolves a
municipal corporation from the duty of exercising ordinary care in the
management of its property, even where the property is devoted to
a governmental purpose, or which permits such corporation, under the
guise of governmental use, to negligently invade and destroy the
property of another. The plaintiff has the same rights in the premises
as would a private citizen whose building might be carried away in a
flood negligently created by the defendant, and, as the only express
authority in the state at present is in favor of the right of action under
such circumstances, I am inclined to the view that the suit may be
maintained. This authority referred to is the case of The Mayor, etc.,
of New York v. Bailey, 2 Denio, 433. It was therein held that an ac-
tion lies against the corporation of the city of New York for injuries
occasioned to the property of third persons by the negligent and un-
skillful construction of a dam on the Croton river, although such dam
was a part of the works which were built pursuant to an act of the
Legislature for the purpose of supplying the city with pure and whole-
some water. The general principles were recognized that a property
owner, in the construction of a dam, is bound to use that degree of care
which would be proportionate to the extent of the injury which would
be likely to result to others should the work prove insufficient, and
that a municipal corporation is responsible for the negligence or un-
skillfulness of its agents and servants when employed in the construction
of a work for the benefit of the city or town subject to the government

of such corporation.  The first trial of that case resulted in a judgment
of nonsuit, which was reversed on appeal to the Supreme Court.
Bailey v. The Mayor, etc., of the City of New York, 3 Hill, 531, 38
Am. Dec. 669.  The dam had been constructed by persons who were
employed for that purpose by water commissioners appointed under the
act, and the legal question considered on that appeal was whether
the city was so connected with the work as to be liable for the wrong.
The reversal of the·judgment was based upon the assertion that the
powers conferred upon the. municipality were not granted for public
purposes exclusively, but also for purposes of private advantage and
emolument, and that therefore the corporation, quoad hoc, was to be
regarded as a private company, notwithstanding the fact that the
public might derive a common benefit from the exercise of such powers.
The doctrine of that decision has been often criticised in its application
to the facts of the case, and may be considered as finally overthrown by
the decision of the Court of Appeals in Fire Insurance Co. v. Village
of Keeseville, 148 N. Y. 46, 42 N. E. 405, 30 L. R. A. 660, 51 Am. St.
Rep. 667, where it was expressly held that, in the construction and main-
tenance of a system of waterworks, the legislative grant of power to
a municipal corporation is to be regarded as exclusively for public pur-
poses, and as belonging to the corporation in its public, political, or
municipal character.  That action was brought, however, not for dam-
ages resulting from the invasion and destruction of private property,
but for the nonuser or misuser of the power conferred upon the corpo-
ration by its failure to keep the water system in an ample and effective
condition.  The same principle was enforced for the benefit of counties
in Hughes v. County of Monroe, 147 N. Y. 49, 41 N. E. 407, 39 L. R.
A. 33, and Markey v. County of Queens, 154 N. Y. 675, 49 N. E. 71,
39 L. R. A. 46, where recoveries were sought for personal injuries result-
ing from negligence.  In the more recent one of Lefrois v. County of
Monroe, 162 N. Y. 563, 57 N. E. 185, 50 L. R. A. 206, there was, it is
true, a nuisance created, to the damage of the plaintiff's land and stock;
but the property of the county where the mischief was done was under
the control of county officials by whom the nuisance was created, and
against whom it was declared the action would be maintainable.  The
court said (page 567, 162 N. Y., page 186, 57 N. E., 50 L. R. A. 206):

"It is also to be remembered that the responsibility of this defendant for the
acts of its officials is not the same as that which obtains in the case of ordinary
municipal corporations."

The basis of the decision was the fact that the defendant, as a cor-
poration, did not commit the wrong against which the litigation was
aimed.  In Maxmilian v. Mayor, 62 N. Y. 160, 20 Am. Rep. 468, and
Ham v. Mayor, 70 N. Y. 459, cited by the court in Lefrois v. County
of Monroe, supra, as authority for the proposition that municipal cor-
porations, when performing governmental functions, are not liable for
negligence to third persons whose property rights are invaded, it will
be found that each decision is based upon the fact that the persons by
whom the damage was occasioned were independent officers, not
subordinate to the city, and for whose negligent acts as officials the
city was not liable.  Moreover, in the Maxmilian Case, Bailey v. The
Mayor, supra, as reported in Denio, was cited with apparent approval,

and Judge Folger said (page 170, 62 N. Y., 20 Am. Rep. 468), that where the city "authorizes a use of its corporate property, which use itself makes that property harmful to others, it is liable." On the second trial of the Bailey Case the plaintiff recovered a large sum for the injury done to his land by the breaking of the defendant's dam, and the judgment was sustained in the Court for the Correction of Errors, not upon the doctrine advanced by the Supreme Court, which, as I have said, has since been overruled, but upon the general proposition that the owner of real estate, although a municipal corporation, and although the real estate has been acquired for the construction and maintenance of a municipal waterworks system, is nevertheless responsible for injury done to the property of others by its negligent acts and the negligent acts of its employés in the management of such property. Attention has not been directed to any case in which that proposition has been held to have been misapplied when directed to the case of a dam constructed so negligently and unskillfully by a municipal corporation as to cause the property of others to be swept away and destroyed, on the ground that, in the general construction and maintenance of its waterworks system, the corporation is discharging a governmental function. In the Bailey Case the defendant was the corporate predecessor of this defendant, the waterworks system was the same, and the injury was of the same character as that now under consideration. The question of exemption upon the ground of sovereignty was raised by counsel upon the second appeal in that case, but was not considered by the court; the main question discussed being whether the relation of principal and agent existed between the corporation and those by whom the dam was constructed, and the liability was finally based upon the duties and responsibilities incident to the ownership of property.

It is to be noted in the case at bar that the erection of the flashboards was no part, so far as appears, of the original legislative scheme of construction, but was the voluntary act of the defendant. It was admitted on the trial that the work of placing the flashboards upon the crest of the dam was done by the defendant, so that no question is presented, such as arose in several of the adjudicated cases relating to the defendant's freedom from liability because of the acts of independent officials over whom it had no control.

The many cases in which a municipal corporation has been held exempt from liability to respond in damages for personal injuries occassioned in the negligent exercise of governmental functions have no controlling application to the case, because the property of the citizen is protected by a constitutional provision from the assault even of the sovereign, unless just compensation is made for the taking involved. Neither the state nor any political division can take the property of others for public use without compensation. Const. art. 1, § 6. It can hardly be claimed that an act which results in a trespass upon and the actual injury or destruction of the property of a citizen is not the taking of such property, at least pro tanto. And such an act cannot be defended as an exercise of sovereign power which may not be redressed by action. It certainly could not be defended by legislative sanction, if at all, without express legislative authority for the performance of the specific act complained of. Morton v. Mayor, etc., of New York,

140 N. Y. 207, 35 N. E. 490, 22 L. R. A. 241.   And where the act is of such a nature as to constitute a positive invasion of the individual rights guarantied by the Constitution, legislative sanction is insufficient as a protection.   Seifert v. City of Brooklyn, 101 N. Y. 136, 4 N. E. 321, 54 Am. Rep. 664.

If this action cannot be maintained, the plaintiff is apparently without remedy, and, on the principle for which the appellant contends, a private citizen whose property should be injured or destroyed by the defendant's negligence in the management of its real estate devoted to the maintenance of its water system would be equally remediless. In view of the constitutional prohibition referred to, and the absence of a single specific adjudication in the state in the defendant's favor on the precise question presented, it would seem that the decision in the Bailey Case, supra, should be followed.   While the exact grounds of the affirmance there cannot be known with certainty, as but four opinions, differing somewhat in theory, were delivered in support of the affirmative votes of nineteen members of the court, it is as yet the only decision on the direct question of a court of last resort, and an adequate principle of its justification may be found in the language of the opinion delivered by Chancellor Walworth (2 Denio, 445), viz.:

"It is upon the ground that the dam was the property of the corporation, and that such corporation was legally bound to see that its corporate property was not used by any one so as to become noxious to the occupiers of property on the river below, that the judgment in this case must be sustained, if it can be sustained at all."

I recommend affirmance of the judgment and order.

Judgment and order affirmed, with costs.   All concur.