Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, RICH, and CARR, JJ.

Archibald R. Watson, Corp. Counsel, for appellant.
Hersey Egginton, for respondent.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Mr. Justice Kelley.

---

## OAKES MFG. CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. November 23, 1910.)

1. MUNICIPAL CORPORATIONS (§ 733*)—TORTS—EXERCISE OF GOVERNMENTAL POWERS—MAINTENANCE OF WATERWORKS.

   Where a municipality maintains a public water system, it is acting as a governmental agency, and is therefore not liable for negligence in maintaining the water supply.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1547–1549; Dec. Dig. § 733.*]

2. MUNICIPAL CORPORATIONS (§ 745½*)—TORTS—EXERCISE OF CORPORATE POWERS—MINISTERIAL DUTIES IMPOSED.

   Where a ministerial duty is specifically imposed by statute or otherwise upon a municipality, it is liable for the negligence of its officers in the performance of such duty.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1568, 1569; Dec. Dig. § 745½.*]

3. MUNICIPAL CORPORATIONS (§ 747*)—TORTS—LIABILITY—MISTAKE OF JUDGMENT—WATER SUPPLY.

   Greater New York Charter (Laws 1897, c. 378) § 1, makes the consolidated city the successor of the constituent municipalities, with all their rights, powers, and duties. Section 517 vests in the city of New York. and places on the commissioner of water supply, the rights, powers, and obligations of Long Island City as to the public water supply. Sections 479 and 483 further charge the commissioner of water supply with maintaining the purity of the water supply. Long Island City Charter (Laws 1871, c. 461) tit. 10, provided for water commissioners, with power to establish a water supply, and made it their duty to take all proper measures to preserve the purity and sufficiency of the water. *Held* that, even if a duty was imposed on the consolidated city, in favor of inhabitants of Long Island City, to provide a public supply of water, an error in selecting a source of supply which was subject to contamination by sea water was error in the exercise of a discretion judicial in its nature, and imposed no liability on the consolidated city for damages.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1570–1577; Dec. Dig. § 747.*]

Appeal from Special Term, Queens County.

Action by the Oakes Manufacturing Company against the City of New York. From a judgment for defendant (65 Misc. Rep. 97, 120 N. Y. Supp. 796), plaintiff appeals. Affirmed.

Argued before WOODWARD, BURR, THOMAS, RICH, and CARR, JJ.

John D. Kernan, for appellant.
Theodore Connoly (Clarence L. Barber and Edward S. Malone, on the brief), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CARR, J.  The plaintiff is a corporation, which owns a factory located in the city of New York, in the Borough of Queens, in a locality which was within the limits of the former municipal corporation of Long Island City.  Its business is to make dyestuffs by extraction from logwood.  In such business it has used for some years, both for steam boiler uses and for the preparation of its dyestuffs, about 50,000 gallons of water a day.  This water it got from the water supply system of the city of New York for a number of years past.  It claims in this action that the water so furnished to it by the city of New York was so impure, chemically, as to be wholly unfitted for use in making the dyestuffs, and likewise so impure as to be undesirable for use in steam boilers.  It claims, further, that in subjecting it to use for the making of dyestuffs, it was obliged to go to great expense in distilling and otherwise treating the water.  For such expense it asks damages in the sum of $300,000, and a mandatory injunction against the city of New York, prohibiting the use by the city, in its water mains, of water of the character complained of.  The chemical impurity said to be in the water in question arose from the presence of an unduly large proportion of chlorine, which found its way into the water from the fact that the sources of supply were located in neighborhoods where the soil was exposed to the infiltration of sea water, whenever heavy pumping occurred.  The amount of chlorine varied from time to time; but it is claimed that it was present so continuously and so considerably as to inflict constant damage on the plaintiff.  The water complained of came from two distinct sources of supply, some of it from the city's own pumping station, and most of it from a supply furnished to the city under a contract with a private corporation.

The trial court granted a judgment of nonsuit against the plaintiff, on the ground that the facts pleaded, and as briefly outlined above, were not sufficient in law or in equity to constitute a cause of action against the defendant, the city of New York.  Both at the trial and here on this appeal the plaintiff asserted a liability on the part of the defendant on the ground of negligence in the conduct of its system of water supply, in that it knowingly furnished to the plaintiff, after due notice and against its protest, water that was unfitted for the plaintiff's use.  The plaintiff claims that its necessities for water would have been met if the city had supplied water of ordinary purity, and that, as to the general public, the city had a duty to supply ordinarily "pure and wholesome water" to those who paid the ordinary charges or rents for such service, as did the plaintiff.  The relation between the general public and a municipality maintaining a system of water supply has been the subject of much discussion in reported decisions.  Whatever expressions may appear to the contrary in text-books and in judicial opinions elsewhere, it is the settled law of this state that in maintaining a water supply system for general public use the municipality is acting as a governmental agency in the work of the state itself, and not as proprietor engaged in a service for its own purposes and profit.  Fire Insurance Co. v. Village of Keeseville, 148 N. Y. 46, 42 N. E. 405, 30 L. R. A. 660, 51 Am. St. Rep. 667.  This rule was

adopted after careful consideration and a thorough review of the previous case law on the subject, not only of this state, but of the country at large, and of England as well. As a necessary corollary, from this holding it was further held, in the case above cited, that a municipal corporation was not liable for negligence for nonuser, or misuser, in the maintenance of the water supply system, so far as the furnishing of water itself was concerned.

In applying this rule of nonliability, recourse was had to a general principle many times applied theretofore and since. Hughes v. County of Monroe, 147 N. Y. 49, 41 N. E. 407, 39 L. R. A. 33; Maxmilian v. Mayor, 62 N. Y. 160, 20 Am. Rep. 468; Hughes v. City of Auburn, 161 N. Y. 96, 55 N. E. 389, 46 L. R. A. 636. This principle, as repeatedly recognized and applied, is that a municipal corporation is not liable, unless made so by statute, for the negligence of its public officers in carrying out or omitting an exercise of the governmental power of the state itself, because in such agency the corporation acts, not for itself, but for the state, and has the same exemption from liability as has the state itself. Therefore, for the purposes of this appeal, assuming that there was negligence on the part of the public officers of the city of New York, which resulted in damage to the plaintiff, there is no liability on the part of the city itself for such negligence, unless the case can be brought within the scope of another principle, equally well settled, which imposes upon a municipal corporation, under various circumstances, liability for the negligence of its public officers in the performance of a ministerial duty specifically imposed by statute on the corporation. The appellant contends that there was imposed specifically on the city of New York by statute a duty or obligation to furnish a supply of pure and wholesome water to such of its inhabitants as resided or had places of business in that portion of its territory as comprised the former Long Island City.

It appears that by the revised charter of Long Island City, enacted in 1871 (Laws 1871, c. 461, tit. 10), provision was made for the appointment of water commissioners, to whom power was given to acquire lands for the purposes of a municipal water supply and to construct a supply system at an expense not to exceed $300,000. It was further provided as follows:

"It shall be the duty of the said board [of water commissioners] and they shall have the power: (1) To keep the property and works belonging to the city, and used and provided for the purpose of furnishing a supply of water, in good order and repair, and to see that all proper measures are taken to preserve the purity of the water, and a sufficient supply thereof, immediately after the passage of the act for mapping and laying out of Long Island City, and after the streets and avenues are laid out and the grades established. (2) They shall have power, whenever they deem it advisable, to cause the line of water pipes connected with such waterworks to be laid down and extended through any of the public streets, lanes or alleys in said city," etc.

These provisions continued in the Long Island City charter until it was consolidated into the city of New York by the "Greater New York Charter" of 1897. That act constituted the new or greater city the successor corporation of all the municipal corporations coming under its provisions—

"with all their lawful rights and powers and subject to all their lawful obligations without diminution or enlargement except as herein otherwise specially provided; and all of the duties and powers of the several municipal and public corporations united and consolidated as aforesaid into the city of New York are hereby devolved upon the municipal assembly of said city of New York so far as the same are applicable to said city and not herein otherwise specially provided, to be exercised in accordance with the provisions of this act." Greater New York Charter (Laws 1897, c. 378) § 1.

That act, in section 517, further provided as follows:

"For the purposes of this act  *  *  *  all of the rights, powers, privileges, duties and obligations of Long Island City, or of any or either of its departments or officers,  *  *  *  in respect to any of the public waterworks or the public water system, or the public water supply thereof, the sale and distribution of the same, are hereby vested in the city of New York, and for the purpose of administration are hereby devolved upon the said commissioner of water supply of the city of New York, to be by him executed pursuant to the provisions, directions and limitations of this act."

Section 479 of the same act charges the commissioner of water supply—

"with the execution of such measures as may be necessary to preserve and increase the quantity of water and keep it pure and wholesome and free from contamination and pollution," etc.

Section 483 provides, further, that the commissioner of water supply—

"is hereby authorized, empowered and directed to carry out the provisions of this act, in the manner hereinafter provided, for the purpose of maintaining, preserving and increasing the supply of pure and wholesome water for the use of the city, and for the purpose of preventing or removing contamination or pullution of any supply or source or sources of supply of water heretofore acquired by or on behalf of said city, and for the purpose of preventing the contamination or pollution of any river, water course, lake, pond, stream or reservoir hereafter acquired for the purpose of supplying said city with water."

From these provisions of statute, the plaintiff argues that there has been a specific duty imposed upon the defendant to take proper measures to preserve the purity of its water supply for public use, and that neglect to do so is actionable whenever damage occurs. The negligence asserted by the plaintiff consists, not in improperly caring for the water supply after it was acquired, but in determining upon a source of water supply which was unsuitable to the plaintiff's needs, whatever it might be otherwise in that locality. It is true that the plaintiff claims that the water supplied was not only unsuitable to its own needs, but unsuitable generally for public use. However, as before said, its unsuitability arose, not from negligence in its care, but negligence in the choice of its sources of supply. Assuming, without deciding, that the statutes impose a specific duty on the defendant to maintain a water supply system and to furnish water for public use, the further question arises whether this duty is so absolute as to be ministerial, or whether, in determining the source of supply, it is quasi judicial and discretionary. If it be the latter, then no liability attaches to the defendant for nonperformance or negligent performance by its agents. Cain v. City of Syracuse, 95 N. Y. 83, and cases cited.

The question of sources of water supply are generally complicated by attending circumstances. Ideal conditions are scarcely attainable. Ordinarily a municipality must take what it can get within the limit of reasonable expenditure. In determining what it shall take, there is involved generally questions of judgment and discretion. For error or mistake in such determination, there is no liability, or, at least, there is no case to be found, with reasonable diligence, where such a liability has been declared. The situation disclosed in the case at bar is one where a party has located in a section illy supplied with water, and where to meet the ordinary needs of the public, the municipality is obliged to contract for a temporary supply with private water companies. It contracts for a supply of "pure and wholesome water," and its negligence is said to consist in the fact that the source of such supply was such that the water was inevitably polluted with seepage of sea water. It is urged that, had it selected another source of supply, it could have obtained better water. But in determining its source of supply it acted, as we think, judicially in a matter clearly involving discretion, through certain public officers charged by statute with the duty of selection, and, for their mistakes of judgment under complex circumstances, we think the defendant is not liable.

The judgment should be affirmed, with costs. All concur.